**The PEOPLE of the State of Colorado, Petitioner**

**v.**

**Richard Dee FRY, Respondent.**

**No. 03SC98.**

Supreme Court of Colorado,
En Banc.

June 28, 2004.

---

Ken Salazar, Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

In this case, we consider whether the preliminary hearing testimony of an unavailable witness is admissible at trial. In accordance with the United States Supreme Court's recent decision in *Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), we hold that previous testimony is admissible only if the witness is unavailable and the defendant had an adequate prior opportunity for cross-examination. Because preliminary hearings in Colorado do not present an adequate opportunity for cross-examination, we find that the trial court erred in admitting preliminary hearing testimony. The error in this case was not harmless. Therefore, we affirm the court of appeals' decision remanding the case for a new trial.

## II. Facts and Procedure

The victim in this case, Darla Fischer, died as a result of complications related to a cerebral hemorrhage that was caused by an impact to the head. At trial, the parties disputed whether a fall or an assault caused the

injury. A jury convicted Respondent Richard Fry, Fischer's boyfriend at the time, of second degree assault and second degree murder for Fischer's death.

At the preliminary hearing, the prosecution called Fry's uncle, Arlo Gene Burgess, to testify. Burgess testified that about two days after Fischer was hospitalized, Fry telephoned him and stated that "Darla [Fischer] was in the hospital and that he had put her there." Burgess further stated that Fry had told him he had hit Fischer and that he thought she had brain damage. However, Fry telephoned him again about two weeks later, Burgess testified, and told him that he had "no hand in it, that somebody else had done that."

Defense counsel did not cross-examine Burgess at the preliminary hearing. Burgess died before trial.

After Burgess died, Fry's counsel filed a Motion to Exclude Hearsay Testimony of Arlo Gene Burgess. Fry argued that Burgess's preliminary hearing testimony was inadmissible at trial pursuant to the Confrontation Clause in article II, section 16, of the Colorado Constitution, and this court's decision in *People v. Smith*, 198 Colo. 120, 597 P.2d 204 (1979). Moreover, the defense contended that Burgess had a motive to lie because he had allegedly been assaulted by Fry and because he had been intimately involved with Fry's girlfriend, Fischer. The prosecution countered that the testimony was admissible under the residual hearsay exception because the defense had an opportunity to cross-examine Burgess at the preliminary hearing. Additionally, the prosecution asserted that the testimony was reliable because Burgess had no motive to lie.

The trial court denied the motion, ruling that Burgess's testimony was admissible under the residual hearsay exception, C.R.E.

807. The trial court reasoned that although *People v. Smith* prohibits the use of preliminary hearing testimony under C.R.E. 804, such testimony can be admitted pursuant to another hearsay exception which meets the two part test of unavailability and reliability as set forth in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and *People v. Dement*, 661 P.2d 675 (Colo.1983). The case then went to trial and Fry was convicted.

The court of appeals reversed. *People v. Fry*, 74 P.3d 360 (Colo.App.2002). It stated that *Smith* established a bright-line rule prohibiting the use of preliminary hearing testimony of an unavailable witness. *Id.* at 364. Further, the court of appeals reasoned that although *Smith* was decided before *Roberts* and *Dement*, it "essentially determined that preliminary hearing testimony does not possess the requisite trustworthiness" to satisfy the reliability prong of the *Roberts* test. *Id.* Thus, the court of appeals found that the testimony was improperly admitted. *Id.* Additionally, the court of appeals held that the error was not harmless beyond a reasonable doubt. *Id.* at 365. The court noted that the prosecution relied heavily on Burgess's testimony and that the other incriminating evidence was ambiguous and insufficient to support the conviction. *Id.* The court of appeals therefore remanded the case for a new trial. *Id.*

We granted certiorari to review two questions: first, whether *Smith* should be read to categorically exclude all preliminary hearing testimony, even when that testimony meets the two-part test of unavailability and reliability and would be admissible under a hearsay exception other than C.R.E. 804, the exception discussed in *Smith*; and second, whether any error was harmless beyond a reasonable doubt.[1]

---

1. Specifically, we granted certiorari on the following questions:

 Whether the pre-Rules of Evidence case of *People v. Smith*, 198 Colo. 120, 597 P.2d 204 (1979), should be read to categorically prohibit the admission of all preliminary hearing evidence even where: (a) the evidence is admissible under an exception to the hearsay rule set forth in the Rules of Evidence; and (b) the evidence is supported by "particularized guar-

antees of trustworthiness" sufficient to meet confrontation clause concerns as set forth by this court's and the United States Supreme Court's case law guiding the admission of evidence under exceptions to the hearsay rule.

 Whether in light of the other evidence of the [respondent's] guilt, any erroneous admission of the respondent's uncle's preliminary hearing testimony was harmless beyond a reasonable doubt.

In the time between briefing and oral argument in this case, however, the United States Supreme Court decided *Crawford v. Washington,* which overruled *Roberts. Crawford v. Washington,* —— U.S. ——, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Court held that testimonial statements of an unavailable witness are not admissible unless the defendant had a prior opportunity for cross-examination. Consequently, we now review the questions before us in light of *Crawford.*

## III. Confrontation Clause

To answer the questions before us, we first briefly review the purposes and history behind the Confrontation Clause. Next, we examine the progression of United States Supreme Court cases analyzing the Confrontation Clause and our own interpretation and application of those cases. We then outline the nature and purpose of preliminary hearings in Colorado and how they impact our Confrontation Clause analysis. We then apply this analysis to the case before us and find that the use of a transcript from the preliminary hearing as evidence at trial violated Fry's right to confront the witnesses against him. Finally, we review the court of appeals' decision to determine whether the error in this case was harmless. We agree with the court of appeals' decision that the prosecution did not show beyond a reasonable doubt that the error was harmless. Thus, we affirm the court of appeals decision remanding the case for a new trial.

### A. Confrontation Clause—Purposes and History

A defendant's right to confront the witnesses against him is guaranteed by both the Sixth Amendment of the United States Constitution and article II, section 16 of the Colorado Constitution.[2] Even without our

state provision guaranteeing this right, the United States Supreme Court has held that "this bedrock procedural guarantee applies to both federal and state prosecutions" through the Fourteenth Amendment. *Crawford v. Washington,* —— U.S. ——, ——, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (citing *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)).

The history behind the Confrontation Clause is discussed extensively in *Crawford,* —— U.S. ——, ——–——, 124 S.Ct. 1354, 1359–64, 158 L.Ed.2d 177. Although we do not discuss it at length here, we review the Clause's history briefly to illustrate the importance of the right to confrontation in our system of law.

The concept that an accused has the right to confront the witnesses against him dates back to Roman times, but was incorporated into English law in the 1600s. *Crawford,* —— U.S. ——, ——–——, 124 S.Ct. 1354, 1359–61, 158 L.Ed.2d 177. English courts developed the right, allowing out-of-court testimony only if the witness was unable to testify in person. *Id.* at 1360–61. English courts further developed the common law to require that statements made before trial were admissible only if the accused had a prior opportunity to cross-examine the witness. *Id.*

Although several state constitutions included a right of confrontation, the United States Constitution did not originally include that right. *Id.* at 1362. Following criticism regarding the omission, the First Congress included the right in the Sixth Amendment. *Id.* The People of Colorado included a right to confrontation of witnesses against an accused in Colorado's original constitution and it has remained unchanged since that time. *See* Colo. Const. art. II, § 16.

**2.** The Sixth Amendment to the United States Constitution states:

"In all criminal prosecutions the accused shall enjoy the right ... to be confronted with the witnesses against him ...." .

The Colorado Constitution states:

"In criminal prosecutions the accused shall have the right ... to meet the witnesses against him face to face ...."

Although the federal Confrontation Clause does not include specific language requiring face to face confrontation, the U.S. Supreme Court has stated that " '[s]imply as a matter of English' it confers at least 'a right to meet face to face all those who appear and give evidence at trial.' " *Coy v. Iowa,* 487 U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (citing *California v. Green,* 399 U.S. 149, 175, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)).

The purposes behind both the federal and state Confrontation Clauses are well articulated. We have stated that the Confrontation Clause is designed to ensure that convictions are not obtained through the use of *ex parte* affidavits. *People v. Bastardo*, 191 Colo. 521, 524, 554 P.2d 297, 300 (1976); *see also Crawford*, — U.S. —, —, 124 S.Ct. 1354, 1363–64, 158 L.Ed.2d 177. We have recognized that testimony is much more reliable when it is given under oath at trial where the witness can be cross-examined and the jury may observe the witness's demeanor. *People v. Dement*, 661 P.2d 675, 680 (Colo.1983). Thus, although by necessity exceptions to the right of confrontation must exist, we have continually maintained the importance of that right. Accordingly, we must protect the most obvious manifestation of that right-the opportunity for cross-examination. *See Pointer*, 380 U.S. at 406–07, 85 S.Ct. 1065.

In sum, the right of an accused to confront the witnesses against him has been regarded as a fundamental right for hundreds of years. It was included in both the United States and Colorado Constitutions to insure that persons would not be convicted on the basis of *ex parte* testimony and without the benefit of cross-examination. This right remains crucial to our adversarial system of law.

### B. Confrontation Clause Case Law

We first examine the history of the U.S. Supreme Court's treatment of the Confrontation Clause. The Sixth Amendment of the United States Constitution applies to state prosecutions through the Fourteenth Amendment and we have followed U.S. Supreme Court law regarding the Confrontation Clause. In addition, we outline our case law and our interpretation of the Supreme Court's case law.

Until the Supreme Court's recent decision in *Crawford*, the test for Confrontation Clause violations was outlined in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), *overruled by Crawford*, — U.S. —, 124 S.Ct. 1354, 158 L.Ed.2d 177,. In *Roberts*, the Court set forth a two-part test to determine whether prior testimony of a hearsay declarant was admissible.

*Id.* at 65–66, 100 S.Ct. 2531. First, the Court stated that the Confrontation Clause required that the declarant be unavailable to testify at trial. *Id.* at 65, 100 S.Ct. 2531. Second, if unavailability was established, the Court found that the Clause approves only statements that bear adequate indicia of reliability. *Id.* at 65–66, 100 S.Ct. 2531. The Court held that reliability could be inferred where the testimony fell under a firmly rooted hearsay exception. *Id.* at 66, 100 S.Ct. 2531. Before evidence could be admitted when it did not come under such an exception, the party offering the evidence had to show that the evidence possessed particularized guarantees of trustworthiness. *Id.*

Applying this test in *Roberts*, the Court found that the Confrontation Clause was not violated by the introduction of an unavailable witness's preliminary hearing testimony where the witness had been cross-examined at the preliminary hearing. *Id.* at 73. The Court held that "[s]ince there was an adequate opportunity to cross-examine [the witness], and counsel ... availed himself of that opportunity, the transcript ... bore sufficient 'indicia of reliability' and afforded 'the trier of fact a satisfactory basis for evaluating the truth of the prior statement.'" *Id.* (citing *Mancusi v. Stubbs*, 408 U.S. 204, 216, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972)).

We adopted the *Roberts* test in *Dement*, 661 P.2d at 681. In *Dement*, we reached only the first prong because we found that the prosecution failed to establish unavailability. *Id.* at 681. However, in later cases, we applied the reliability prong of the *Roberts* test. We stated that we must look at the totality of the circumstances surrounding the statement to decide whether it possessed the requisite guarantees of trustworthiness. *Stevens v. People*, 29 P.3d 305, 314 (2001), *abrogated by Crawford*, — U.S. —, 124 S.Ct. 1354, 158 L.Ed.2d 177, (citing *Idaho v. Wright*, 497 U.S. 805, 820–21, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). Although we noted that courts have "considerable discretion in determining what factors may enhance or detract from the statement's reliability," we pointed out several factors a court could use. *People v. Farrell*, 34 P.3d 401, 406–07 (2001), *abrogated by Crawford*, — U.S. —, 124

S.Ct. 1354, 158 L.Ed.2d 177, (citing *Wright,* 497 U.S. at 822, 110 S.Ct. 3139). These factors included whether the statement was detailed, how soon after the events the statement was made, whether the statement was voluntary, whether the declarant had a motive to inculpate the defendant, among others. *Id.* at 406–07; *see also Stevens,* 29 P.3d at 314. Thus, our reliability analyses considered both the procedural setting in which the contested statements were made as well as the substance of the statements. *See id.*

The Supreme Court's recent decision in *Crawford* rejects the reliability prong of the *Roberts* test in favor of an inquiry into whether the defendant had a prior opportunity to cross-examine witnesses. *Crawford,* —— U.S. ——, ——, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177. In explaining its abrogation of the *Roberts* test, the Court in *Crawford* begins with the purposes of the Confrontation Clause. *Id.* at 1363–64. The Court explains that the "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id.* The Court notes that the common law at the time of the Sixth Amendment's enactment "conditioned admissibility of an absent witness's examination on unavailability and a prior opportunity to cross-examine. The Sixth Amendment therefore incorporates those limitations." *Id.* at 1366.

■■■ Thus, the Supreme Court's decision explains that the Clause provides a procedural, not a substantive, guarantee. *Id.* at 1370. "It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* Therefore, the flaw in the *Roberts* test is that it allows judges to substitute their determinations of "amorphous notions of 'reliability'" for a jury's determination. *Id.* The Supreme Court cites inconsistent decisions of reliability as a reason why allowing courts to make reliability determinations about *ex parte* testimony does not provide the protection envisioned by the Framers adopting the Confrontation Clause. *Id.* at 1371 (citing *Stevens,* 29 P.3d at 316, and *Farrell,* 34

P.3d at 406–07, as examples of the inconsistent application of the *Roberts* test due to the wide range of sometimes contradictory factors used in the reliability analysis). "Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." *Id.* at 1370.

*Crawford* limits its holding to "testimonial statements," noting that the Confrontation Clause applies to "witnesses" or those who "bear testimony." *Id.* at 1364. *Crawford* explicitly declines to define "testimonial" comprehensively, but notes that "it applies at a minimum to prior testimony at a preliminary hearing." *Id.* at 1374.

■■■ The Supreme Court has refocused its analysis of Confrontation Clause violations, mandating not that evidence necessarily be reliable, but that its reliability be assessed in a particular manner—through cross-examination. The *Crawford* test therefore limits the admissibility of testimonial evidence, which includes preliminary hearing testimony, to that of unavailable witnesses whom the accused has had an adequate prior opportunity to cross-examine. In light of *Crawford,* we reject the *Roberts* reliability analysis that we adopted in *Dement.* Consequently, to the extent that *Stevens* and *Farrell* and any of our other prior cases employ that analysis, we overrule those cases. We therefore change our Confrontation Clause inquiry to whether a defendant had an adequate prior opportunity to cross-examine, not whether the previous testimony is reliable.

## C. Preliminary Hearings in Colorado

Before the holdings of either *Roberts* or *Crawford,* we noted that the admissibility of prior testimony depended on the nature of the proceeding at which the prior testimony was made. *People v. Smith,* 198 Colo. 120, 125, 597 P.2d 204, 207 (1979), *overruled on other grounds by People v. Vance,* 933 P.2d 576 (Colo.1997), *overruled by Griego v. People,* 19 P.3d 1 (Colo.2001) (*Vance* overruled *Smith* on grounds that materiality is an issue that must be submitted to the jury; *Griego* later overruled *Vance* on the proper standard of review for such an error). In particular, we examined whether prior testimony given at a preliminary hearing provided an ade-

quate opportunity for cross-examination. *Id.* at 125–26, 597 P.2d at 207–08. In deciding that question, we looked to the purpose of the preliminary hearing. *Id.* We concluded that due to the limited nature of the preliminary hearing, the opportunity for cross-examination was insufficient to satisfy the Confrontation Clause. *Id.* at 126, 597 P.2d at 208. We now reiterate that holding.

 A preliminary hearing is limited to matters necessary to a determination of probable cause. *Id.* at 125, 597 P.2d at 207. The rights of the defendant are therefore curtailed: evidentiary and procedural rules are relaxed, and the rights to cross-examine witnesses and to introduce evidence are limited to the question of probable cause. *Id.*

> A defendant has no constitutional right to unrestricted confrontation of witnesses and to introduce evidence at a preliminary hearing. By rule, defendants have the right to a preliminary hearing under certain circumstances, and pursuant to the rule a defendant 'may cross-examine witnesses against him and may introduce evidence in his own behalf.' Crim. P. 7(h)(3). However, the preliminary hearing is not intended to be a mini-trial or to afford the defendant an opportunity to effect discovery.

*Id.* at 125–26, 597 P.2d at 207–08 (quoting *Rex v. Sullivan,* 194 Colo. 568, 571, 575 P.2d 408, 410 (1978)). Hence, a preliminary hearing does not provide the same safeguards as a trial.

 Additionally, the judge's findings at a preliminary hearing are restricted to a determination of probable cause. *Id.* at 125, 597 P.2d at 207. A judge may not engage in credibility determinations unless the testimony is incredible as a matter of law. *Id.* at 126, 597 P.2d at 208; *Hunter v. Dist. Court,* 190 Colo. 48, 52–53, 543 P.2d 1265, 1268 (1975); *People v. Ramirez,* 30 P.3d 807, 809 (Colo.2001) (Testimony is "incredible as a matter of law" if it is "in conflict with nature or fully established or conceded facts. It is testimony as to facts which the witness physically could not have observed or events that could not have happened under the laws of nature."). Aside from the exceptionally rare instance of credibility as an issue of law,

defense counsel has no legitimate motive to engage in credibility inquiries and may be prohibited from doing so. *Smith,* 198 Colo. at 126, 597 P.2d at 208; *Hunter,* 190 Colo. at 52–53, 543 P.2d at 1268. Thus, the right to cross-examination may be curtailed by the judge in all but the most unusual circumstances. *Id.* Because credibility is not at issue and probable cause is a low standard, once a prima facie case for probable cause is established, there is little defense counsel can do to show that probable cause does not exist. Therefore, as a practical matter, defense counsel may decline to cross-examine witnesses at the preliminary hearing, understanding that the cross-examination would have no bearing on the issue of probable cause and that the judge may limit or prohibit the cross-examination. Thus we conclude that the opportunity for cross-examination at a preliminary hearing is very limited. Further, the opportunity for cross-examination regarding the credibility of a witness, as a matter of fact, exists only to the extent that an attorney persists in asking questions that have no bearing on the issues before the court, and such irrelevant questioning is not prohibited by the court.

 Given the limited nature of the preliminary hearing in Colorado, we held in *Smith* that the Colorado Confrontation Clause "precludes the admission of the transcript of a preliminary hearing at a subsequent trial when the witness whose testimony is sought has become unavailable." *Id.* at 126, 597 P.2d at 208 (compare *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (in California case, where preliminary hearing constitutes a mini-trial, unavailable witness's prior testimony at preliminary hearing admissible)). We relied in *Smith* on the Supreme Court's analysis in *Barber v. Page,* 390 U.S. 719, 722, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), that "there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." The Supreme Court first held in *Barber* that the state did not establish unavailability. *Id.* at 724–25, 88

S.Ct. 1318. Additionally, it rejected the notion that the defendant had waived his right to confront the witness by not cross-examining him at the preliminary hearing. *Id.* at 725, 88 S.Ct. 1318. The Court noted that even if defense counsel had cross-examined the witness at the preliminary hearing, the Confrontation Clause still would not be satisfied on the facts of that case. *Id.* Citing the differences between a trial and a preliminary hearing, the Court concluded that cross-examination at the preliminary hearing would not have provided the same opportunity for exploration into the case. *Id.*

> The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial.

*Id.* The Court's decision in *Barber*—that the exception to the right of confrontation arises only when a witness is unavailable and previously gave testimony that was subject to cross-examination by the defendant—thus foreshadowed its decision in *Crawford* requiring the same.

Thus, we have held that the preliminary hearing does not satisfy Confrontation Clause requirements. *Smith,* 198 Colo. at 126, 597 P.2d at 208; *see also Commonwealth v. Smith,* 436 Pa.Super. 277, 647 A.2d 907, 912–15 (1994)(because issue of credibility important at trial, and because credibility not an issue at preliminary hearing, preliminary hearing testimony inadmissible because defendant did not have a "full and fair opportunity for cross-examination"); *cf. People v. Rosa,* 302 A.D.2d 231, 231–32, 754 N.Y.S.2d 279 (N.Y.App.Div.2003) (suppression hearing did not provide full and fair opportunity for cross-examination; little incentive to impeach credibility); *Nazworth v. State,* 352 So.2d 916, 918 (Fla.App.1977) (bond hearing, the purpose of which was limited to setting bond, did not afford defendant a proper opportunity for cross-examination). Other states are split on whether a preliminary hearing provides an adequate opportunity for cross-examination. *See generally* Francis M. Dougherty, J.D., Annotation, *Admissibility Or Use In Criminal Trial Of Testimony Given At Preliminary Proceeding By Witness Not Available At Trial,* 38 A.L.R.4th 378, § 6 (2004). Nonetheless, we do not wish to change the scope of the preliminary hearing by overruling our decision in *Smith* that a preliminary hearing does not provide an adequate opportunity for cross-examination. As the Attorney General recognized in oral argument, *Smith* is good law; it prevents the preliminary hearing from becoming a mini-trial which would expend time and resources the judiciary does not possess. Changing the purpose of these hearings would impact all criminal cases, not just those with Confrontation Clause issues. Preliminary hearings are limited to a determination of probable cause so that they do not become mini-trials. Were we to allow extensive cross-examination by defense counsel so as to prevent any Confrontation Clause violations at trial if a witness were to become unavailable, we would turn the preliminary hearing in every case into a much longer and more burdensome process for all parties involved. Therefore, we do not expand the scope of preliminary hearings in order to allow them to satisfy Confrontation Clause requirements. Rather, we merely reiterate our holding in *Smith;* although a defendant must have been provided with a prior adequate opportunity to cross-examine an unavailable witness before the State can admit that witness's previous testimony into evidence, the preliminary hearing does not provide an adequate opportunity to cross-examine sufficient to satisfy the Confrontation Clause requirements.

### D. Application

Before proceeding with our Confrontation Clause analysis, we point out what we do not discuss here. First, we do not delve into whether the preliminary hearing testimony would be admissible under a hearsay exception. Although admissibility under a hearsay exception may have lent support to a finding of reliability under the *Roberts* test, in light of *Crawford,* such a determination is

no longer relevant. Even were we to find the preliminary hearing testimony to meet the requirements of the residual hearsay exception, Fry's right to confrontation was violated nonetheless as a result of the lack of an adequate opportunity for cross-examination pursuant to *Crawford* and *Smith.* *Stevens,* 29 P.3d at 311 ("Although an out-of-court statement may be admissible because it falls within an exception to the hearsay rule, the statement nevertheless must be excluded at a criminal trial if admitting it into evidence would deprive the defendant of his constitutional right to be confronted with the witnesses against him."). Thus, as we would find a Confrontation Clause violation in either case, we need not address whether the preliminary hearing testimony meets the requirements of the residual hearsay exception. Second, we do not address the unavailability prong of the *Crawford* test. It is uncontested that Burgess passed away prior to trial and was therefore unavailable.

This case exemplifies the dangers of admitting preliminary hearing testimony as evidence at trial when the witness is unavailable. Burgess made several statements incriminating Fry at the preliminary hearing. Although Burgess's credibility was factually subject to attack, credibility determinations are not allowed at preliminary hearings. *See Hunter,* 190 Colo. at 52–53, 543 P.2d at 1268. Thus, Burgess's testimony could not be subjected to the procedural rigors required by the Confrontation Clause at the preliminary hearing. Moreover, the trial court further allowed the testimony to skirt the procedural safeguards of the Confrontation Clause by allowing the testimony to be read aloud at trial, by a police officer, without the opportunity for immediate rebuttal. The testimony was therefore never subject to direct attack. The process employed in this case illustrates how dispensing with an adequate opportunity for cross-examination impedes a defendant from having a proper chance to rebut the evidence against him.

To start, Burgess made several statements incriminating Fry at the preliminary hearing. Defense counsel did not cross-examine Burgess. Nonetheless, there were several reasons to question Burgess's credibility. First, Burgess had motive to lie. He stated that he had been assaulted by Fry in the past. Additionally, defense counsel presented evidence that showed that Burgess was involved intimately with the victim, who was Fry's girlfriend at the time. Moreover, Burgess's character was not flawless. He had a history of criminal convictions and evidence indicated that he was constantly intoxicated. Finally, Burgess was hard of hearing and it was necessary to shout when speaking to him on the telephone. Thus, his testimony regarding telephone conversations with Fry was not necessarily accurate. In short, the preliminary hearing did not provide an adequate opportunity for Fry to confront Burgess and reveal these issues of credibility.

The introduction of Burgess's testimony at trial further demonstrated the importance of the right to confrontation. At trial, a police officer read Burgess's testimony to the jury. Although the trial court allowed Fry to present evidence that indirectly questioned Burgess's testimony, it denied Fry's request that he be allowed to rebut the testimony immediately after it was read. Thus, the procedure followed by the trial court did not allow any opportunity for Fry to attempt to rebut the testimony against him.

Because Burgess's testimony was not subject to cross-examination, or tested through any other means, it was allowed to stand unrebutted, its truth completely unquestioned. The evidence which brought to light some of the credibility issues was not allowed until Fry's case-in-chief, much later in the trial. Thus, the effect of that rebuttal was greatly diminished. Even if the trial court had allowed the evidence immediately after Burgess's testimony, however, such indirect contradictions do not carry the force of cross-examination. As the U.S. Supreme Court has stated, cross-examination is the " 'greatest legal engine ever invented for the discovery of truth.' " *Green,* 399 U.S. at 158, 90 S.Ct. 1930 (quoting 5 *Wigmore* § 1367). This case illustrates the truth of that statement. Indirect rebuttal evidence cannot have the same effect on a jury as answers to questions put directly to the witness on cross-examination. Here the witness might

have been confronted with whether he was in fact intimately involved with Fry's girlfriend; whether he had a drinking problem; whether he had been drinking before his testimony at the preliminary hearing; whether he had a hearing problem; and whether he had a particularly hard time hearing on the telephone. A skilled cross-examiner can confront a dishonest witness, or a witness who is mistaken, with questions that cause the witness to see the corner he has painted himself into and react in a way that permits the jury to judge credibility from what it hears and sees. Thus, a witness's testimony on cross-examination may be much more damning to the witness's credibility than any sort of indirect evidence the defense can offer. In sum, the opportunity for cross-examination is without equal as a tool in the search for truth. Therefore, by admitting the preliminary hearing testimony of Burgess at trial, the trial court denied Fry his right to an adequate opportunity to cross-examine the witnesses against him. As such, Fry's right to confront the witnesses against him was also denied.

## IV. Harmless Error Analysis

Having established that the admission of Burgess's testimony at trial constituted constitutional error, we must now determine whether the error was harmless.

Two types of constitutional error exist: structural errors, which affect the "framework within which the trial proceeds, rather than simply an error in the trial process itself"; and trial errors, which occur "during the presentation of the case to the jury and ... may therefore be quantitatively assessed in the context of other evidence presented." *Blecha v. People*, 962 P.2d 931, 942 (Colo.1998) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Structural errors require automatic reversal. *Id.* Trial errors require reversal unless an appellate court determines that the error was harmless beyond a reasonable doubt. *Id.* The prosecution bears the burden of proving that the error was harmless. *Id.* Confrontation Clause violations are trial errors. *Id.* Thus, in this case, the prosecution must prove that

the trial court's error in admitting Burgess's testimony absent an adequate opportunity for Fry to cross-examine Burgess was harmless. We find that the prosecution did not make that showing.

The inquiry in a harmless error analysis is "whether the guilty verdict actually rendered in this trial was surely unattributable to the error," and "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered." *Id.* (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). Factors a reviewing court should consider include, "the importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of corroborating or contradictory evidence on the material points of the witness' testimony, the extent of the cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Id.* (quoting *Merritt v. People*, 842 P.2d 162, 169 (Colo.1992)). Thus, a reviewing court must look at the trial as a whole and decide whether there is a reasonable probability that the defendant could have been prejudiced by the error. *Id.* If so, the error is not harmless and the reviewing court must reverse the conviction below. *Id.*

The error in this case was not harmless. Using the factors articulated above, we find that the prosecution did not meet its burden of proving that the error was harmless beyond a reasonable doubt.

First, the importance of Burgess's testimony is made clear by looking at the prosecution's treatment of the evidence. In its notice of intent to offer Burgess's preliminary hearing testimony, the prosecution stated that Burgess's testimony was "more probative on the issue of what happened to Darla Fischer than any other evidence in existence." In addition, the prosecution relied on Burgess's testimony on three different occasions in closing argument.

Second, although the evidence was cumulative in that Burgess's testimony was corroborated by Fischer's hearsay statements and the testimony of Fry's ex-girlfriend, both witnesses were also subject to attack.

A police officer questioned Fischer about the incident after she underwent surgery to remove a blood clot on her brain. Because Fischer was unable to speak, the officer asked her to respond to questions by nodding her head yes or no. Through this officer's testimony, the prosecution introduced Fischer's hearsay communications that Fry had beaten her. The officer testified that when he asked whether Fry had caused the injuries, Fischer nodded yes. On cross-examination, however, defense counsel showed that the officer did not establish whether Fischer was referring to injuries sustained a few days earlier or to the injury that caused the cerebral hemorrhage. Further, the officer testified that he was not certain whether Fischer was oriented as to time or place. Also, the officer stated that he received only affirmative nods in answer to his questions with the exception of one shrug. Thus, he agreed with defense counsel that he could not tell if Fischer's ability to answer questions was limited to affirmative nods.

Fry's ex-girlfriend, Karen LeDoux, also testified against Fry. She stated that Fry had told her that he had beat up Fischer. She also testified that Fry had hurt her on previous occasions. However, on cross-examination, LeDoux admitted that she had previously told the hospital and an acquaintance that her injuries were caused by her boyfriend at the time, not Fry. In addition, LeDoux testified that she had been convicted of forgery. Thus, although testimony corroborated Burgess's testimony, it was questioned extensively on cross-examination.

Burgess's testimony was contradicted by Fry's version of events. Fry told investigating officers that when Fischer came home on the morning of the injury, she appeared drunk or inebriated in some manner. Fry told the officer that he heard her fall outside the house and that when he helped her to the bedroom, she fell twice. Experts testified that Fischer's injuries could have been caused by a fall or accident. Additionally, the statements · incriminating Fry were not corroborated by physical evidence. Consequently, had the trial court not erred in admitting Burgess's testimony, the incriminating evidence against Fry would have been substantially weaker.

Third, we review the extent of cross-examination. Defense counsel did not cross-examine Burgess at the preliminary hearing. Although the prosecution knew that Burgess was in failing health, it did not depose him before trial, a procedure which would have allowed defense counsel an opportunity for cross-examination. *See* Crim. P. 15; *Morse v. People,* 180 Colo. 49, 53–54, 501 P.2d 1328, 1330 (1972). Additionally, although the trial court relaxed the rules for admission of evidence which questioned Burgess's testimony, it did not allow the impeachment evidence to be presented directly after Burgess's testimony was read to the jury. Thus, the importance of the contradictory evidence may not have been fully realized.

Finally, the overall strength of the prosecution's case was questionable. Burgess's testimony was read by a police officer and relied upon heavily by the prosecution. Although the prosecution had corroborating witnesses, their testimony was not immune from attack. Additionally, there was no physical evidence linking Fry to the crime. In sum, the prosecution has not shown that the error in admitting Burgess's preliminary hearing testimony was harmless beyond a reasonable doubt.

## V. Conclusion

We find that the defendant's right to confront the witnesses against him was violated when the trial court admitted the preliminary hearing testimony of an unavailable witness at trial. Pursuant to the United States Supreme Court's decision in *Crawford,* we hold that previous testimony is not admissible at trial unless the witness is unavailable and the defendant had an adequate prior opportunity for cross-examination. Thus, we reiterate our holding in *Smith* that a preliminary hearing does not present an adequate opportunity for cross-examination. Therefore, we hold that the trial court erred in admitting preliminary hearing testimony of an unavailable witness at trial. Furthermore, we hold that the error was not harmless.

Accordingly, we affirm the decision of the court of appeals remanding the case for a new trial.

Justice COATS dissents, and Justice KOURLIS joins in the dissent.

Justice COATS dissenting.

In the United States Supreme Court's recent and dramatic re-interpretation of the Confrontation Clause, *see Crawford v. Washington,* — U.S. —, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the majority finds support for our own, quarter-century-old, blanket prohibition against using the preliminary hearing testimony of a witness whose death makes him unavailable to testify at trial. Because I understand the analysis of *Crawford* to dictate precisely the opposite result, I respectfully dissent.

In *Crawford,* the Supreme Court overturns a line of authority, stretching back at least as far as 1980, *see Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which had evaluated the constitutional admissibility of prior testimony according to its trustworthiness, whether or not the defendant was given an opportunity to cross-examine. By contrast, *Crawford* makes clear that "where testimonial evidence is at issue," the Sixth Amendment demands the satisfaction of two, and only two, conditions: "unavailability and a prior opportunity for cross-examination." *Id.* at 1367–69, 124 S.Ct. 1354. The Confrontation Clause therefore can no longer be construed to permit the admission of prior testimony taken in the absence of an opportunity for cross-examination, regardless of other guarantees of trustworthiness; or, for that matter, to sometimes require the exclusion of prior testimony as to which the defendant was given an opportunity to cross-examine, based on further scrutiny of its trustworthiness.

Perhaps because *Crawford* was concerned only with an *ex parte* statement, made during police interrogation, it made no attempt to further define the term "cross-examine" or specify circumstances under which the "opportunity to cross-examine" might be considered constitutionally inadequate. It also nowhere suggests, however, that the Confrontation Clause envisions a more restrictive notion of "cross-examination" than the term itself implies or that the right to cross-examine at a preliminary hearing must be considered inadequate. Quite the contrary, using the term *"ex parte"* at least a dozen times, the Supreme Court leaves no doubt that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations, as evidence against the accused." *Id.* at 1363, 124 S.Ct. 1354.

The *Crawford* Court overruled *Roberts,* not only for analyzing the restrictions of the Confrontation Clause too narrowly, which resulted in the admission of "statements that do consist of *ex parte* testimony upon a mere finding of reliability;" but also for analyzing them too broadly by applying the same reliability standard to hearsay not consisting of *ex parte* testimony, which resulted "in close constitutional scrutiny in cases that are far removed from the core concerns of the Clause." *See id.* at 1369, 124 S.Ct. 1354. If the language it used were not clear enough on its face, the Supreme Court's intent in referring to an "opportunity to cross-examine" is apparent from its juxtaposition with the term *"ex parte* testimony" throughout, as well as the Court's expressed concern to articulate a clear standard that avoids the *ad hoc* analyses of the past. The Crawford analysis also makes abundantly clear that the Ohio Supreme Court in *State v. Roberts,* 55 Ohio St.2d 191, 378 N.E.2d 492 (1978), erred in excluding prior preliminary hearing testimony as a violation of the Confrontation Clause, not for the reasons given by the Supreme Court at the time, but rather by discounting statements in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), "suggesting that the mere opportunity to cross-examine rendered the prior testimony admissible." *See Ohio v. Roberts,* 100 S.Ct. at 2541.

By articulating a blanket prohibition against the use of preliminary hearing statements at trial, the holding of this court in *People v. Smith,* 198 Colo. 120, 597 P.2d 204 (1979), set this jurisdiction apart from virtually every other jurisdiction in the country.

See, e.g., Rodriguez v. State, 711 P.2d 410, 414 (Wyo.1985) (expressly rejecting blanket prohibition of Smith ); see also King v. State, 780 P.2d 943 (Wyo.1989)(same); see generally Francis M. Dougherty, J.D., Annotation, Admissibility or Use in Criminal Trial of Testimony Given at Preliminary Proceeding by Witness not Available at Trial, 38 A.L.R.4th 378, §§ 1–6 (2004) ("At the present time, virtually all jurisdictions appear to allow the introduction of testimony given at a preliminary proceeding, at which the accused was present and had an opportunity to cross-examine the witness, when the witness is unavailable at trial."); 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence, § 491(d), 782 (2nd ed. 1994 & Supp. 2003) (observing that by far the greater number of courts hold that receipt of preliminary hearing testimony against the accused does not violate his constitutional rights).

This has been particularly true of the federal courts, which have found preliminary hearing testimony constitutionally admissible at trial pursuant to Rule 804(b)(1) of the Federal Rules of Evidence, which is virtually identical with CRE 804(b)(1). See, e.g., U.S. ex rel. Haywood v. Wolff, 658 F.2d 455, 463 (7th Cir.1981); Glenn v. Dallman, 635 F.2d 1183 (6th Cir.1980). Crawford has only strengthened rather than undermined those holdings. See United States v. Avants, 367 F.3d 433, 445 (5th Cir.2004) ("The qualities that made [the witness'] testimony admissible under 804(b)(1): unavailability and prior opportunity for cross-examination" satisfy "Crawford's confrontation clause test.").

In Smith, this court distinguished Colorado on the basis of the limited nature of its preliminary hearing. Limitations restricting the inquiry to probable cause and excluding questions of witness credibility, however, do not make preliminary hearings in this jurisdiction significantly different from those permitted by many other states or the federal government. See, e.g., Coleman v. Burnett, 477 F.2d 1187 (D.C.Cir.1973) (preliminary hearing not a mini-trial on guilt but an investigation into reasonableness of bases for charge; examination of witnesses not of same breadth as at trial); Virgin Islands v. Aquino, 378 F.2d 540, 549 (3d Cir.1967)

("Credibility is not the issue at a preliminary hearing as it is in a trial. All the arts of cross-examination which are exerted to impair the credibility of a witness are useless in a preliminary hearing. Nevertheless, we must accept for present purpose the rule which makes no distinction between testimony given at a prior trial and the testimony given at a preliminary hearing.").

Whether or not the defendant committed the crime of which he is charged is the precise inquiry at a preliminary hearing, and the Colorado Rules of Criminal Procedure, like their federal counterparts, expressly guarantee a defendant the right to be represented by counsel and to call and cross-examine witnesses. See Crim. P. 5(a)(4)(II) & (7)(h)(2). A preliminary hearing in Colorado is therefore not an ex parte proceeding and, as a matter of law, guarantees the defendant an "opportunity to cross-examine." Although an assessment of the credibility of witnesses is not within the scope of a probable cause determination, a defendant is not barred from challenging the perceptions, memory, or even veracity of witnesses who testify at a preliminary hearing. Nor is it irrelevant or meaningless to confront a witness with the goal of inducing him to correct, modify, or even retract his earlier statement. Even if the exercise of a court's discretion to limit examination could, under some circumstances, render the opportunity for cross-examination constitutionally inadequate, the blanket prohibition of Smith is unjustified.

In Smith, a case in which the primary holding concerning the materiality of perjured statements was subsequently overruled by the Supreme Court, see United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), this court relied upon the state constitution to find a per se confrontation clause violation. Smith, 198 Colo. at 126, 597 P.2d at 208. Nothing in the opinion indicates that the issue was presented as a challenge under the state constitution, separate and apart from the corresponding provision of the federal constitution, nor did this court attempt to articulate any distinction between the two. In support of its ultimate holding, the court relied only upon State v. Roberts, which construed the Sixth Amend-

ment of the federal constitution and was itself reversed shortly thereafter by the Supreme Court. Because *Smith* neither suggests nor contains any justification for a separate reading of the Colorado Constitution, and because any federal underpinnings, upon which it may once have rested, have now clearly been removed by *Crawford,* I would overrule it and reverse the court of appeals.

I therefore respectfully dissent.

I am authorized to state that JUSTICE KOURLIS joins in the dissent.