130 P.3d 401 (2006)
132 Wash.App. 58
STATE of Washington, Respondent,
v.
Yasin MOHAMED, Appellant.
No. 54508-6-1.
Court of Appeals of Washington, Division 1.
March 13, 2006.
Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Appellant.
David M. Seaver, King Co. Pros. Office, Seattle, WA, for Respondent.
BECKER, J.
¶ 1 At a pretrial hearing held to determine the admissibility of the 911 call from his accuser, Hattie York, appellant Yasin Mohamed confronted York with direct questions. *402 In response to his questions she testified that she had fabricated the allegations of assault made in the 911 call. If a defendant has had a prior opportunity to cross examine a witness about her testimonial statements, the State may use those statements to convict the defendant without violating his confrontation rights, even though the witness is unavailable at trial. We apply this rule here to affirm appellant Yasin Mohamed's assault conviction.

FACTS
¶ 2 Hattie York called 911 at 2 a.m. on December 19, 2003. She asked to have a police officer come to her apartment. She told the dispatcher her ex-boyfriend came "and he beat me up really bad", and she had a no-contact order. York stayed on the telephone answering questions. She said her lips were bleeding, but she did not want an ambulance to come because she did not want him to come back. She gave the dispatcher Mohamed's name, described him, said he had been drinking, and added that she was pregnant. At first she reported she could see him leaving in a car, but soon told the dispatcher that he was "knocking at the door again" and yelling, and she was afraid he was "gonna do something really bad."
¶ 3 Police arrived in approximately 10 minutes while York was still on the telephone. They described her as crying, hysterical, and bleeding from the mouth. She told them Mohamed had come in through the locked door, demanded that she take him to the store to buy beer, and beat her when she refused. Police found Mohamed outside in a car and took him into custody. York identified him at the scene as her assailant.
¶ 4 The State, after verifying York's statement that she had a court order prohibiting Mohamed from contacting her, charged him with fourth degree assault and felony violation of a protection order. The State proposed to elicit York's testimony about Mohamed's previous acts of violence against York. The State also sought to introduce into evidence the 911 call and York's statements to the officers. The trial court conducted a pretrial hearing on April 29, 2004, to decide the admissibility of prior bad acts under ER 404(b), and the admissibility of the 911 call and statements to the officers as excited utterances under ER 803(a)(2).
¶ 5 The prosecutor called York to testify at the hearing, but only for the ER 404(b) issue. By this time, York  now seven months pregnant  was recanting the version of events contained in the statements she made on the night of the 911 call. The prosecutor explained that the State intended to support the admissibility of the excited utterances without calling York to testify about them. Because it was Mohamed who wished to obtain her testimony on that subject, the prosecutor suggested that defense counsel ask direct questions. Mohamed did not object, and the court ruled that York could be treated as a defense witness for her testimony pertaining to the excited utterance issue.
¶ 6 The hearing began with the prosecutor eliciting York's testimony that Mohamed became a worse person when he was drinking, and that on two occasions in the past he had "open-handed slapped" her. The court then invited defense counsel to question York either on the prior incidents of violence or on the excited utterances. Counsel asked York two questions about the prior incidents of violence. Counsel then examined her directly about the events on the night of the 911 call.
¶ 7 During this examination, York admitted making the 911 call. She explained that she called "because I saw Mohamed outside with another woman, with his arm around her, and I was jealous and angry." York said she went outside, called to him, and began to walk toward them. At this point Mohamed ran, leaving the other woman there. York said she and the woman, whom she had never seen before or since, got into an argument and then a fight. Over the State's relevance objection, York testified that the other woman punched her in the mouth. The woman then ran off.
¶ 8 York testified that after the fight, she went back to her apartment and created the story that it was Mohamed who had assaulted her. The reason she appeared to the police as being emotionally upset was that she was "so jealous that I couldn't see *403 straight." But in fact, she said, it was not Mohamed who assaulted her that night.
¶ 9 Based on York's testimony, Mohamed argued that her 911 call and her statements to police were not truly excited utterances. He cited the rule that a statement is not an excited utterance "if the witness had an opportunity to, and did fabricate a lie after the startling event and before making the statement". See State v. Williamson, 100 Wash. App. 248, 258, 996 P.2d 1097 (2000). The court decided, however, that the 911 tape and York's initial statements to the responding officers were excited utterances, and they would be admitted on that basis. Mohamed next raised the issue of confrontation, citing Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). He argued that in view of York's recantation, the State could not call her except for purposes of impeachment, and therefore he would be unable to cross-examine her. The trial court ruled that York would be available and subject to cross-examination on her admission that she called 911, as well as her testimony about prior acts of violence.
¶ 10 Between this hearing and the trial, the State lost contact with York. The State requested a ruling confirming that the previously admitted excited utterances would be admissible even though York was not available for trial. Mohamed again objected based on his right of confrontation. The trial court rejected his argument. "Crawford indicated there had to be an opportunity to cross examine, which you did in the pretrial hearing. That's your confrontation."[1]
¶ 11 In light of the rulings admitting the excited utterances, Mohamed joined in the State's request to admit the record of the April 29 pretrial hearing, "because I would otherwise have no opportunity to present the jury with Ms. York's recantation".[2] At trial, the jury heard York's 911 call and her statements to the officers. Later, the court informed the jury that the State's next witness would be Hattie York, "through the presentation of testimony by Ms. York at an earlier hearing." The questions put to York at the April 29 hearing, and her answers, were read to the jury.[3]
¶ 12 The jury found Mohamed guilty as charged, and he appeals.

PRETRIAL CONFRONTATION
¶ 13 "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him". U.S. Const. amend. VI. The Confrontation Clause prohibits admission of testimonial statements made out of court by a witness who is unavailable for trial unless there has been a prior opportunity for cross-examination. Crawford v. Washington, 541 U.S. at 68, 124 S.Ct. 1354. Whether a trial court has violated an accused's confrontation rights is an issue reviewed de novo. State v. Medina, 112 Wash.App. 40, 48, 48 P.3d 1005 (2002).
¶ 14 Without York's excited utterances  the 911 call and her initial statements to the officers  the evidence was probably insufficient to convict. Mohamed contends these out of court statements were testimonial and should have been excluded under Crawford. The State responds that York's statements, even if testimonial, were admissible because Mohamed had an adequate opportunity to confront York about them at the April 29 hearing.
¶ 15 When a witness is unavailable to testify at trial, her testimony at a preliminary hearing or previous trial is admissible, assuming a proper opportunity for cross-examination at the previous hearing. See, e.g., California v. Green, 399 U.S. 149, 165, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); State v. Ortego, 22 Wash.2d 552, 157 P.2d 320, 159 A.L.R. 1232 (1945); State v. Roebuck, 75 Wash.2d 67, 72, 448 P.2d 934 (1968); State v. Solomon, 5 Wash.App. 412, 487 P.2d 643 (1971). Crawford did not change this well-established rule. Crawford, 541 U.S. at 57-58, 124 S.Ct. 1354 (confirming that an earlier opportunity to cross-examine can be sufficient to satisfy the Confrontation Clause).
*404 ¶ 16 In Crawford, the defendant was on trial for stabbing a man who allegedly tried to rape the defendant's wife. The wife, a witness to the stabbing, was unavailable at trial due to the marital privilege. The court allowed the State to play for the jury a tape recording of the wife's statement to the police describing the stabbing. Her statement arguably contradicted evidence that the stabbing occurred in self-defense. The Court held that the State's use of the wife's out-of-court testimonial statement violated the Confrontation Clause because the defendant had no opportunity to test it by cross-examination.
¶ 17 That York was unavailable at trial is undisputed on appeal. For purposes of our Crawford analysis, we assume (without deciding) that York's 911 call was testimonial in nature and therefore analogous to the wife's statement to police in Crawford. But unlike the defendant in Crawford, Mohamed had an opportunity to question the witness in court. The question is whether that opportunity was adequate to fulfill the purposes of the Confrontation Clause.
¶ 18 Preliminary hearing testimony satisfies the constitutional requirement for confrontation if "given under circumstances closely approximating those that surround the typical trial"  witness under oath, defendant represented by counsel, proceedings conducted before a judicial tribunal equipped to make a record, and defendant given every opportunity to cross-examine the witness about the out-of-court statement. Green, 399 U.S. at 165, 90 S.Ct. 1930 (cited in State v. Jenkins, 53 Wash.App. 228, 235, 766 P.2d 499 (1989)).
¶ 19 Mohamed contends the pretrial hearing did not afford him a full and fair opportunity to cross-examine York. First, he contends it was unduly limited in its scope, citing a recent Colorado Supreme Court decision, People v. Fry, 92 P.3d 970 (2004). A preliminary hearing in Colorado is a probable cause hearing. The rights to cross-examine witnesses and to introduce evidence are limited to the question of probable cause. Typically, defense counsel has no legitimate motive to engage in credibility inquiries and may be prohibited from doing so, because the trial judge may not engage in credibility determinations unless the testimony is incredible as a matter of law. Fry, 92 P.3d at 977. In Fry, a witness testified at a preliminary hearing, giving evidence that the defendant was guilty of assault. Defense counsel did not cross-examine the witness at the hearing. The witness died before trial, and his preliminary hearing testimony was admitted, leading to a conviction. Reviewing in light of Crawford, the Colorado Supreme Court determined that the pretrial confrontation opportunity afforded was insufficient, and remanded for a new trial. Fry, 92 P.3d at 977.
¶ 20 The pretrial hearing in this case was not comparably limited. Confronted with conflicting evidence about whether York's 911 call was spontaneous, the court could make credibility determinations in deciding whether it qualified as an excited utterance. State v. Briscoeray, 95 Wash.App. 167, 173, 974 P.2d 912 (1999) (when 911 caller later recants, "trial court does not err by weighing the witness' credibility against the evidence indicating that the statements were spontaneous and reliable"). Mohamed had a full opportunity to prove, through his direct examination of York, that her 911 call was not spontaneous. See State v. Brown, 127 Wash.2d 749, 758-59, 903 P.2d 459 (1995) (key determination for excited utterance is whether the declarant was still under the influence of the event to the extent that the statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment); State v. Chapin, 118 Wash.2d 681, 688, 826 P.2d 194 (1992) (the longer the time interval between the startling event and the statement, the greater the need for proof that the declarant did not actually engage in reflective thought). Had the court found York's testimony credible, the 911 call and other out-of-court statements would not have qualified as excited utterances and the case would have likely been dismissed for insufficient evidence. The trial court recognized that its decision on the excited utterance issue would be critical, and did not curtail Mohamed's examination of York in any way.
*405 ¶ 21 Next, Mohamed contends he did not have a similar motive to cross-examine York as he would have had at a trial where she was available. Under ER 804(b)(1), the hearsay exception under which former testimony may be allowed if the witness is unavailable, the prior hearing must afford "an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Under the Confrontation Clause too, similarity of motive is a useful and relevant tool with which to examine how closely the circumstances at the pretrial hearing approximated those that surround the typical trial:
The test must turn not only on whether the questioner is on the same side of the same issue at both proceedings, but also on whether the questioner had a substantially similar interest in asserting that side of the issue. If a fact is critical to a cause of action at a second proceeding but the same fact was only peripherally related to a different cause of action at a first proceeding, no one would claim that the questioner had a similar motive at both proceedings to show that the fact had been established (or disproved).
United States v. DiNapoli, 8 F.3d 909, 912 (2d Cir.1993).
¶ 22 Mohamed's interest at the pretrial hearing was the same as it would have been at trial, and equally pressing: to establish York's recantation as credible, and to prove that her out of court statements were unreliable. Mohamed now argues that counsel would have questioned York more thoroughly to reveal her biases if he had known she would be unavailable at trial, but this is speculation. In hindsight one can always think of more questions that could have been asked. The significant point is that at the pretrial hearing Mohamed's motive to ask such questions was strong and his opportunity unlimited.
¶ 23 Mohamed also contends he was at a disadvantage because at the pretrial hearing, the State did not question York about the assault except to obtain her admission that she made the 911 call and the statements to the officers. He argues that he was put in a situation comparable to the defendant in State v. Rohrich, 132 Wash.2d 472, 477, 939 P.2d 697 (1997). In Rohrich, out of court accusations were admitted under the child hearsay statute. The prosecutor called the child witness to testify on direct but did not ask questions about the alleged sexual contacts. Our Supreme Court reversed the conviction, finding a violation of the defendant's right to confrontation. "The opportunity to cross-examine means more than affording the defendant the opportunity to hail the witness to court for examination. It requires the State to elicit the damaging testimony from the witness so the defendant may cross-examine if he so chooses." Rohrich, 132 Wash.2d at 478, 939 P.2d 697. Mohamed contends that like in Rohrich, the State's tactics impermissibly forced him to bring out York's testimony through his own direct examination.
¶ 24 Rohrich does not control here. The circumstances are not comparable. The testimony Mohamed elicited from York at the pretrial hearing was advantageous to him, not damaging  the very reason why the State had no interest in obtaining it. And in Rohrich the issue was whether the defendant had an adequate opportunity to confront the witness at trial when the court allowed the State to prove the elements of the crime through an out of-court statement, even though the witness was available to give direct testimony. Here, the issue is whether the pretrial hearing furnished Mohamed with an adequate opportunity to confront York about her out of court statements. The fact that the State did not directly elicit her testimony about the charged assault at the pretrial hearing is of no moment because the State's objective was to gain admission of the 911 call, not to prove the elements of the crime.
¶ 25 Essentially, Mohamed is complaining that he had to ask York direct, non-leading questions instead of being able to cross-examine her within the scope of the State's direct. But it was York's recantation, not any limitation imposed by the court or the State, that put Mohamed in this position. He was able to elicit from York testimony that rebutted, point by point and in every detail, the version of events presented by her *406 911 call  just as he would have been able to do if she had testified at trial. In the related context of ER 801(b)(1), the party against whom former testimony is offered must have had opportunity and similar motive to develop the testimony by "direct, cross, or redirect examination." ER 804(b)(1) (emphasis added). We conclude that under these circumstances, where the witness was recanting her out of court statements, the protection of the Confrontation Clause was not undermined by requiring the defendant to conduct a direct examination.
¶ 26 York's sworn testimony at the pretrial hearing was subject to unfettered and properly motivated questioning about her out-of-court statements. Both parties were free to question her about the inconsistency between her testimony at the hearing and the statements she made on the night in question. We conclude the pretrial hearing sufficed as a prior opportunity for cross-examination. There was no violation of Mohamed's Sixth Amendment rights.
¶ 27 Mohamed contends that reversal of his conviction is required under the counter-part provision of the state constitution: "In criminal prosecutions the accused shall have the right ... to meet the witnesses against him face to face". Wash. Const. art. I, § 22. This section requires independent analysis using the factors set forth in State v. Gunwall, 106 Wash.2d 54, 61-63, 720 P.2d 808 (1986). See State v. Foster, 135 Wash.2d 441, 473-81, 481-98, 957 P.2d 712 (1998); State v. Shafer, 156 Wash.2d 381, 128 P.3d 87 (2006). However, Mohamed's Gunwall analysis would conclude only that a defendant cannot be convicted solely on hearsay without a full and fair opportunity to meet the witness face to face. His analysis does not go to what is required to make the opportunity adequate. We have found Mohamed's opportunity was adequate to satisfy the Sixth Amendment. He has not shown that more is required to satisfy the state constitution. See State v. Ortego, 22 Wash.2d 552, 556, 157 P.2d 320 (1945), finding use of prior testimony not excluded by article I, § 22. Under these circumstances Mohamed's Gunwall analysis falls short and we do not consider it.
¶ 28 Mohamed makes several other contentions in his pro se statement of additional grounds for review. Having reviewed these contentions, we find no error.
¶ 29 The conviction is affirmed.
WE CONCUR: SCHINDLER and BAKER, JJ.
NOTES
[1] Report of Proceedings (5/12/04/2004) at 14.
[2] Report of Proceedings (5/19/2004) at 145.
[3] Report of Proceedings (5/25/2004) at 80-96.