William EDWARDS, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 04SC565.

Supreme Court of Colorado,
En Banc.

Feb. 13, 2006.

Rehearing Denied March 20, 2006.*

\* Justice RICE, Justice COATS and Justice EID do not participate.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, for Petitioner.

John W. Suthers, Attorney General, Laurie A. Booras, First Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Respondent.

BENDER, Justice.

## I. Introduction

We review and affirm the court of appeals' decision in *People v. Edwards*, 101 P.3d 1118 (Colo.App.2004), which held that *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), does not apply retroactively to cases involving postconviction proceedings that concern convictions finalized prior to *Crawford.*

Edwards initiated postconviction proceedings to vacate his felony conviction, which was finalized before the United States Supreme Court decided *Crawford.* The Court rendered the *Crawford* decision while Edwards's postconviction proceedings were pending. This case established that testimonial[1] out-of-court statements are a violation of the Confrontation Clause unless the witness is unavailable to testify at trial and the defendant had a previous opportunity to adequately cross-examine the witness. Because Edwards had had no opportunity to cross-examine a key witness whose statements were admitted at trial under various hearsay exceptions, he seeks to vacate his conviction on grounds that include the violation of his confrontation rights under *Crawford.*[2]

Generally, new rules of criminal procedure do not apply retroactively to cases on collateral review. However, the United States Supreme Court case of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), outlines two exceptions to this general rule. We hold that *Crawford* is a new rule of criminal procedure and adopt the *Teague* test. We analyze *Crawford* under the second *Teague* exception, which allows for retroactive application of a rule if it constitutes a "watershed" rule of criminal procedure. *Id.* at 311, 109 S.Ct. 1060. To be considered watershed, a rule must meet two criteria: (1)

---

1. In *Crawford*, the Supreme Court did not define "testimonial," but did explain that, at a minimum, the term applies to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354.

2. We granted certiorari on the following question: Whether the court of appeals erred when it concluded that *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), does not apply to the defendant's postconviction motion.

"[i]nfringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction;" and (2) "the rule must alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Tyler v. Cain,* 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (citations and internal quotation marks omitted).

The United States Supreme Court has identified only one rule as watershed: the holding in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which recognizes a criminal defendant's right to counsel in cases that involve a possible prison sentence. Because the *Crawford* holding does not alter fundamental due process rights to the extent that the *Gideon* guarantee of right to counsel does, we hold that, under current United States Supreme Court precedent, *Crawford* does not qualify as a watershed rule.

We therefore affirm the court of appeals' decision that *Crawford* does not apply retroactively to cases involving postconviction proceedings that concern convictions finalized prior to *Crawford.*

## II. Facts and Proceedings Below

Police forced William Edwards, petitioner and defendant below, to halt his vehicle when he failed to pull over for a traffic stop. As the police addressed Edwards, a passenger, who appeared to have been beaten, emerged from Edwards's car yelling, "He beat me. He beat me." Later, during the victim's treatment for her injuries, she told attending medical personnel that she had been assaulted.

The prosecution could not locate the victim to testify at trial; but the trial court admitted her statements to the police under the excited utterance exception to the hearsay rule, CRE 803(2). The trial court also admitted the victim's statements to medical personnel, relying on the medical diagnosis and business records exceptions to the hearsay rule—CRE 803(4) and (6), respectively. A jury convicted Edwards of first-degree assault with a deadly weapon, and a judge subsequently convicted him of habitual criminal counts.

Edwards's conviction was affirmed in a direct appeal on issues unrelated to our inquiry, and this court denied certiorari on the case. *People v. Edwards,* 971 P.2d 1080 (Colo.App.1998), *cert. denied,* May 10, 1999. Edwards then filed a Crim. P. 35(c) motion to vacate judgment of conviction, in which he argued, among other issues, that he was denied his constitutional right to confront the victim as a witness against him. The trial court denied his motion. On appeal, in an unpublished opinion, the court of appeals remanded the case with directions for the trial court to address the confrontation issue. The trial court ruled that Edwards's constitutional rights of confrontation were protected through the hearsay rule exceptions. While Edwards's appeal of that ruling was pending, the United States Supreme Court decided *Crawford,* which held that testimonial out-of-court statements are a violation of the Confrontation Clause unless the witness is unavailable to testify at trial and the defendant had a previous opportunity to adequately cross-examine the witness. 541 U.S. at 68, 124 S.Ct. 1354.

The court of appeals, relying on *Teague,* held that *Crawford* did not apply retroactively to Edwards's case. *Edwards,* 101 P.3d at 1124. In reaching this conclusion, the court of appeals reasoned that the holding in *Crawford* announced a new constitutional rule of criminal procedure, and thus was not applicable retroactively unless it fit one of two exceptions outlined in *Teague. Id.* at 1121–22. The court of appeals analyzed the rule under *Teague*'s second exception—the watershed exception. The court of appeals held that the *Crawford* rule is not a watershed rule and, therefore, does not apply to Edwards. *Id.* at 1124.

Edwards now petitions this court on certiorari to reverse the judgment of the court of appeals. He argues that *Crawford* should apply retroactively to his conviction for several reasons: (1) *Crawford* did not announce a new rule of criminal procedure; (2) the court of appeals erred in applying the *Teague* retroactivity test because it has not yet been adopted by this court; and (3) if *Teague* is the applicable test, *Crawford* nonetheless

constitutes a watershed rule of criminal procedure and thus is retroactively applicable.

### III. Analysis

■ The sole issue we address in this case is whether *Crawford* applies retroactively to convictions finalized before that decision. Generally, new constitutional rules of criminal procedure do not apply retroactively to cases on collateral review. *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). However, the United States Supreme Court has set forth exceptions to this general rule. *Teague*, 489 U.S. at 311, 109 S.Ct. 1060. In order to ascertain whether *Crawford* applies retroactively, we begin our analysis with an overview of *Crawford* and its constitutional underpinnings. We then establish which test controls the decision whether the rule announced in *Crawford* applies retroactively. Finally, we analyze the *Crawford* rule under the applicable test. To do so, we must make a series of determinations: (1) whether *Crawford* announces a procedural rule; (2) whether that rule is new; and (3) if the *Crawford* holding does amount to a new rule of criminal procedure, whether it constitutes a "watershed" rule. We turn now to the Sixth Amendment.

### A. The Confrontation Clause of the Sixth Amendment

■ The Confrontation Clause of the Sixth Amendment of the Constitution, applicable to the states through the Fourteenth Amendment, provides "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI; *Gonsoir v. People*, 793 P.2d 1165, 1165 n. 2 (Colo.1990) (citing *Ohio v. Roberts*, 448 U.S. 56, 62, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)).[3] In *Crawford*, the U.S. Supreme Court explained that the Confrontation Clause is principally directed toward controlling the admission of "ex parte examinations as evidence against the accused." 541 U.S. at 50, 124 S.Ct. 1354. In order to discuss *Crawford*'s impact on Con-

frontation Clause jurisprudence, we must first consider its predecessor.

Prior to *Crawford*, *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), was the controlling case outlining the elements needed to satisfy the Confrontation Clause. In *Roberts*, the United States Supreme Court held the Confrontation Clause required that, in order for a witness's prior statement to be admitted at trial, the witness must be deemed unavailable to testify and the statement must bear "adequate indicia of reliability." *Id.* at 66, 100 S.Ct. 2531 (internal quotation marks omitted). The Court determined that hearsay evidence could be considered adequately reliable if it "falls within a firmly rooted hearsay exception." *Id.*

In *Crawford*, the Supreme Court revised the criteria under which testimonial out-of-court statements may be admitted at trial when the witness who made the statements does not testify. *Crawford* involved a wife who refused to testify against her husband under marital privilege. 541 U.S. at 40, 124 S.Ct. 1354. As a result, the prosecution sought to have her earlier statement to police admitted at trial under a hearsay exception. *Id.* The Court held that the Confrontation Clause requires out-of-court testimonial statements by witnesses to be barred from use at trial unless the witness "was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53–54, 124 S.Ct. 1354. Referencing the *Roberts* requirement for adequate reliability, the Court explained that the only constitutionally adequate indication of reliability for testimonial statements is confrontation, as the Constitution requires. *Id.* at 68–69, 100 S.Ct. 2531. Thus, by adding the requirement that there be an opportunity for cross-examination, *Crawford* abrogates *Roberts*.

However, we reiterate the distinction we noted in our recent decision of *Compan v. People*, 121 P.3d 876, 882 (Colo.2005). In that decision we held that, though *Crawford* controls the admission of testimonial state-

---

3. Similarly, the Colorado Constitution gives an accused "the right ... to meet the witnesses against him face to face." Colo. Const. art. II, § 16. However, because Edwards did not raise, and the court of appeals did not address, the issue of Edwards's confrontation rights under the Colorado Constitution, we do not address it here.

ments under the federal Confrontation Clause, the *Roberts* test still applies to non-testimonial evidence.[4] Hence, as we held in *Compan*, *Crawford* abrogates *Roberts* only in cases where testimonial statements are at issue.[5]

## B. Retroactivity of New Rules of Criminal Procedure to Post-conviction Proceedings

Having outlined the constitutional principles involved in this issue, we now consider which test we will use to determine whether *Crawford* applies retroactively to Edwards's case.

In determining whether new rules of constitutional criminal procedure apply retroactively, we have previously used the test the United States Supreme Court articulated in *Linkletter v. Walker*, 381 U.S. 618, 636, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), which we adopted in *People v. Walker*, 666 P.2d 113, 117 (Colo.1983).[6] Because we have not faced a question of the retroactivity of a constitutional rule of criminal procedure since the Supreme Court announced the *Teague* test, *Linkletter* arguably remained precedent in Colorado at the time the court of appeals rendered its decision. However, in deciding this case below, our court of appeals used the newer *Teague* test. *Edwards*, 101 P.3d at 1121–24. The court of appeals did so without referencing the *Linkletter* test or explicitly adopting the *Teague* test.

Edwards asserts that the court of appeals erred in applying *Teague* rather than *Linkletter*. He bases his conclusion on two arguments. First, he contends that *Teague* is not binding on state courts, thus the court of appeals should have applied the *Linkletter* test as dictated by the precedent of this court. Second, Edwards argues *Teague* is not an appropriate test for determining whether judicial decisions announcing new rules of criminal procedure apply to claims raised in Crim. P. 35(c) motions. We address each argument in turn.

To support his assertion that *Teague* is not binding on state courts, Edwards contends that, though states are required to follow United States Supreme Court precedent that interprets provisions of the federal Constitution, the *Teague* test is not such an interpretation. We agree that states are not bound to follow Supreme Court precedent in all circumstances. *See Dickerson v. United States*, 530 U.S. 428, 438–39, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). But we are not as easily persuaded that *Teague* is not the type of constitutional decision that we are bound to apply.

The United States Supreme Court has often recognized that its authority in state courts is limited: " '[f]ederal judges ... may not require the observance of any special procedures' in state courts 'except when necessary to assure compliance with the dictates of the Federal Constitution.' " *Id.* (quoting *Harris v. Rivera*, 454 U.S. 339, 344–45, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981); *see also Mu'Min v. Virginia*, 500 U.S. 415, 422, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991) ("[I]n state courts ... our authority is limited to enforcing the commands of the United States Constitution.")

*Teague* mandates that, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310, 109 S.Ct. 1060. However, the federal Constitution itself does not require or prohibit retroactive application of new constitutional rules. *Moore v. People*, 707 P.2d 990, 996 (Colo. 1985). Thus, though *Teague* regulates the application of constitutional rules, we ac-

---

4. We recently applied this holding in *People v. Vigil*, 127 P.3d 916, 2006 WL 156987 (Colo. 2006).

5. Edwards argues that the victim's statements in this case were testimonial and that their admission violated his confrontation rights. But because we hold that *Crawford* does not apply retroactively, we need not address that issue.

6. That test required an analysis of three factors: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Walker*, 666 P.2d at 117 (quoting *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)).

knowledge the possibility that it does not interpret a constitutional rule itself, and that we are therefore not required to enforce it. Mandatory compliance with *Teague* would not necessarily "assure compliance with the dictates of the Federal Constitution," especially since *Teague* often precludes the application of new constitutional rules. *Dickerson*, 530 U.S. at 438–39, 120 S.Ct. 2326. Perhaps if *Teague* required constitutional rules to be applied retroactively in all situations, we could definitively conclude that it assures compliance with the Constitution. But we leave this debate for another day because, even if we are not bound to follow *Teague*, we have the discretion to do so. *See People v. Timmons*, 690 P.2d 213, 215 (Colo. 1984). This observation leads us to Edwards's second argument against the court of appeals' application of *Teague* and an analysis of whether we should adopt the *Teague* test.

In Edwards's second argument supporting his assertion that the court of appeals erred in applying *Teague* rather than *Linkletter*, he asserts that *Teague* is not an appropriate test for determining whether judicial decisions announcing new rules of criminal procedure apply to claims raised in Crim. P. 35(c) motions. Edwards reasons that *Teague*, which was decided in the context of federal habeas corpus review, puts forth a test more appropriate for that purpose than for Crim. P. 35(c) motions. Edwards relies on the reasoning of Justice Harlan in *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), upon which the *Teague* Court bases its holding, to conclude that the purpose of the *Teague* test is for federal courts to respect comity and the finality of state court judgments. In contrast, Edwards argues, the purpose of Crim. P. 35(c) motions is to prevent criminal injustice. Thus, Edwards concludes, the more flexible *Linkletter* test is better suited to meet the purpose of state Crim. P. 35(c) motions.

 We do not read *Teague* so narrowly. While the decision was rendered in the context of federal habeas corpus review of a criminal state court conviction under 28 U.S.C. § 2254, the *Teague* Court's rationale—and that of Justice Harlan upon which it is based—addresses the broader category of cases on collateral review, which includes Crim. P. 35(c) motions. *See Teague*, 489 U.S. at 301, 305, 109 S.Ct. 1060 (modifying the Supreme Court's approach to "retroactivity for cases on collateral review"); *Mackey*, 401 U.S. at 691–92, 91 S.Ct. 1160. Rule 35(c) "affords every person convicted of a crime the right to seek postconviction review upon the grounds that the conviction was obtained in violation of the Constitution or laws of the United States or the constitution or laws of this state." *Robbins v. People*, 107 P.3d 384, 387 (Colo.2005) (citing *People v. Hubbard*, 184 Colo. 243, 247, 519 P.2d 945, 947 (1974)). Within our criminal justice system, "postconviction proceedings have a dual purpose: to prevent constitutional injustice and to bring finality to judgment." *People v. Rodriguez*, 914 P.2d 230, 252 (Colo.1996) (citing *People v. Hampton*, 187 Colo. 131, 133, 528 P.2d 1311, 1312 (1974)). The *Teague* test meets both of these goals.

The Court in *Teague* emphasizes finality as an underlying consideration for its decision. But the Court also acknowledges that a balance must be struck between honoring finality and preventing injustice: "[t]he fact that life and liberty are at stake in criminal prosecutions shows only that conventional notions of finality should not have *as much* place in criminal as in civil litigation, not that they should have *none*." *Teague*, 489 U.S. at 309, 109 S.Ct. 1060 (citations and internal quotation marks omitted). Thus, while the *Teague* test underscores the preservation of finality, it allows for the prevention of injustice in the most egregious instances through its exceptions to the general rule that new constitutional rules of criminal procedure do not apply retroactively to cases on collateral review.

We have also recognized that the concept of finality is an important landmark on the Colorado criminal justice landscape. *E.g., People v. Wiedemer*, 852 P.2d 424, 434 (Colo. 1993). And we have noted its enhanced significance in the context of Crim. P. 35(c) proceedings. In *Waits v. People*, we declined to retroactively apply a constitutional rule of criminal procedure, stating that "[t]he fact that this is a collateral attack . . . under

Crim. P. 35(c) serves as an additional reason not to apply [the rule] retrospectively." 724 P.2d 1329, 1336 (Colo.1986). Hence, given Crim. P. 35(c) postconviction proceedings' twin purposes of finality and prevention of injustice, and given *Teague*'s balance between these two goals, we conclude that the *Teague* test is appropriate for determining whether new rules of criminal procedure apply to Crim. P. 35(c) claims.

Finally, we note that, though before today we had yet to explicitly adopt the *Teague* test, Colorado jurisprudence has indicated an implicit acceptance of the test. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 119 n. 2 (Colo.1992) (Erickson, J., concurring in part and dissenting in part) ("The *Linkletter* approach has been rejected in criminal law. New rules must be applied to all cases pending on direct review ... but not necessarily to cases pending on collateral review.") (citing *Teague*, 489 U.S. at 310, 109 S.Ct. 1060); *see also People v. Bradbury*, 68 P.3d 494, 497 (Colo.App.2002) ("[U]nless they fall within one of the exceptions recognized in *Teague v. Lane* ... new constitutional rules of *criminal* procedure are not applicable to cases that have become final before the new rules are announced."), *cert. denied*, Apr. 28, 2003.

We have consistently followed the lead of the United States Supreme Court when determining whether a rule of criminal procedure is retroactive. *Timmons*, 690 P.2d at 215. Thus, for reasons of uniformity and compliance with current Supreme Court precedent, and because *Teague* meets the underlying goals of Crim. P. 35(c) collateral attacks, we adopt the *Teague* test with respect to federal constitutional determinations of retroactivity and apply it here. In doing so, we join the ranks of a majority of states. *See Windom v. State*, 886 So.2d 915, 943 (Fla.2004) (noting that twenty-eight state supreme courts and the District of Columbia had adopted the *Teague* test at that point in time).

Having adopted the *Teague* test to determine whether constitutional rules of criminal procedure apply retroactively to cases on collateral review, we now apply the test. To analyze *Crawford* under *Teague*, we employ yet another test, which the Supreme Court has outlined for determining whether a constitutional rule of criminal procedure applies to postconviction proceedings. *Beard v. Banks*, 542 U.S. 406, 411, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004). The *Banks* test incorporates *Teague* and requires a three-part examination: (1) whether the defendant's conviction is final; (2) whether the rule in question is in fact new; and (3) if the rule is new, whether it meets either of the two *Teague* exceptions to the general bar on retroactivity. *Id.* We address each of these three factors in turn.

**1. The Finality of Edwards's Conviction**

■ The first step in the *Banks* retroactivity test calls for us to determine whether Edwards's conviction is final—a question with which we can easily dispense. Convictions in state courts are "final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed.'" *Banks*, 542 U.S. at 411, 124 S.Ct. 2504 (quoting *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994)); *see also People v. Hampton*, 876 P.2d 1236, 1239 (Colo.1994) ("[A] conviction is not final and has no legal force until after appeals have been exhausted."). We denied certiorari on Edwards's direct appeal on May 10, 1999, thereby ending the process of direct appeals. Thus, Edwards's conviction is final, satisfying the first prong of the retroactivity test.

**2. Whether *Crawford* Announces a New Rule of Criminal Procedure**

We now turn to the second prong of the *Banks* retroactivity test and consider whether the *Crawford* holding constitutes a new rule of criminal procedure. Edwards does not address whether the rule is procedural, but he contends that it is not new. We first address whether the rule is procedural, then analyze whether it is new.

We deemed the *Crawford* holding to be a procedural rule in *People v. Fry*, 92 P.3d 970, 976 (Colo.2004). In that opinion, we explained that the United States Supreme Court's rendering of the Confrontation Clause in *Crawford* "provides a procedural,

not a substantive, guarantee" because *Crawford* "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* (quoting *Crawford*, 541 U.S. at 61, 124 S.Ct. 1354).

A rule is procedural rather than substantive if it regulates "only the *manner of determining* the defendant's culpability." [7] *Summerlin*, 542 U.S. at 353, 124 S.Ct. 2519. In articulating the test to discern whether testimonial out-of-court statements can be admitted at trial, the *Crawford* holding regulates the admissibility of evidence, which is a manner of determining culpability and is, therefore, a procedural rule. As we noted in *Fry*, the language of the *Crawford* opinion, itself, supports this conclusion, labeling the Confrontation Clause's ultimate goal of ensuring the reliability of evidence a procedural guarantee. *Fry*, 92 P.3d at 976; *Crawford*, 541 U.S. at 50, 124 S.Ct. 1354. Thus, we reiterate our conclusion in *Fry* and hold that the *Crawford* decision articulates a rule of criminal procedure.

Having determined that the rule announced in *Crawford* is procedural, we next consider whether it is a new rule. Edwards concludes that it is not, and thus should be applied to vacate his conviction. We disagree with Edwards's analysis and hold that *Crawford* imparts a new rule of criminal procedure.

Edwards offers two main arguments in support of his conclusion: (1) the result in *Crawford* was compelled by prior precedent; and (2) Supreme Court case law prior to *Crawford* is consistent with *Crawford*'s underlying principles. In his argument, Edwards also relies upon a concurring opinion in *Bockting v. Bayer*, 399 F.3d 1010, 1022 (9th Cir.2005), which we address separately.

We first address Edwards's contention that a new rule is one in which the result, rather than the rationale, was not compelled by prior precedent. To support his argument, Edwards points to language in *Teague* that states "a case announces a new rule if

the result was not *dictated* by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301, 109 S.Ct. 1060.

We read *Teague* as supporting the opposite conclusion that *Crawford* indeed announces a new rule of criminal procedure. The language quoted by Edwards emphasizes the word "dictated." Thus, if the result in *Crawford*—the use of the witness's statement at trial violated the Confrontation Clause because the defendant had not had a prior opportunity to cross-examine the witness—was not dictated by *Roberts*, *Crawford* announces a new rule. Because *Roberts* did not require an opportunity to cross-examine, we cannot say it dictated the result in *Crawford*. In fact, review of the *Crawford* case under *Roberts* did not dictate the result reached by the Supreme Court. The Washington Supreme Court decision that was reached under *Roberts* and overruled in *Crawford* found the witness's statement was sufficiently trustworthy to be admitted at trial, a result that is obviously not dictated by *Crawford*. *Crawford*, 541 U.S. at 41, 69, 124 S.Ct. 1354.

*Teague* provides further support that *Crawford* announces a new rule. The Court begins its discussion by acknowledging the difficulty in determining whether a case announces a new rule and explaining that the opinion does not "attempt to define the spectrum of what may or may not constitute a new rule." *Teague*, 489 U.S. at 301, 109 S.Ct. 1060. However, the Court gives a general description of a new rule as one that "breaks new ground or imposes a new obligation on the States or the Federal Government." *Id.* By requiring that a defendant have the opportunity to cross-examine a witness against him if that witness is unavailable to testify at trial—a requirement that did not exist under the previous precedent of *Roberts*—*Crawford* imposes a new obligation on the states and federal government.

In his second argument supporting the conclusion that *Crawford* does not announce a new rule, Edwards relies upon the *Craw-*

---

7. In contrast, a substantive rule is one that "alters the range of conduct or the class of persons that the law punishes." *Summerlin*, 542 U.S. at 353, 124 S.Ct. 2519. Generally, such rules apply retroactively. *Id.* at 351, 124 S.Ct. 2519.

*ford* Court's observation that its prior decisions "remained faithful to the Framers' understanding [that t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59, 124 S.Ct. 1354. We disagree with Edwards's interpretation. The Court qualifies its statement with the explanation that, while the results of its decisions "have generally been faithful to the original meaning of the Confrontation Clause," its rationales have not. *Id.* at 60, 124 S.Ct. 1354. This observation indicates that the outcomes, though consistent with the purposes of the Confrontation Clause, were nonetheless reached under discrepant rules. Consistent outcomes can emerge from divergent rules.

Moreover, the *Crawford* Court acknowledges that all its pre-*Crawford* precedent may not have had outcomes consistent with *Crawford*'s mandates. It identifies one opinion rendered under *Roberts* that is "arguably in tension with the rule requiring a prior opportunity for cross-examination when the proffered statement is testimonial." *Id.* at 58 n. 8, 100 S.Ct. 2531 (citing *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)).

Edwards also cites a concurring opinion in *Bockting* to support his contention that *Crawford* does not announce a new rule. We address that opinion separately because it was written by the Honorable John T. Noonan, Jr., a noted constitutional scholar and senior judge on the U.S. Court of Appeals for the Ninth Circuit. In his concurrence, Judge Noonan concludes—contrary to the majority opinion of the Ninth Circuit—that *Crawford* constitutes a rationale shift rather than a new rule. *Bockting*, 399 F.3d at 1023–24 (Noonan, J., concurring). Judge Noonan bases his determination on two reasons. First, he relies on the Supreme Court's statement in *Crawford* that its earlier decisions were faithful to the Framers' intent that testimonial statements of absent witnesses be admitted only if the declarant is unavailable and the defendant had a prior opportunity to conduct a cross-examination. *Id.* at 1023 (citing *Crawford*, 541 U.S. at 59, 124 S.Ct.

1354). Second, Judge Noonan refers to *Summerlin*, in which Justice Scalia, who penned *Crawford* during the same term, wrote that it is unlikely that any "new procedural rules without which the likelihood of an accurate conviction is seriously diminished" have yet emerged. *Id.* at 1023–24 (quoting *Summerlin*, 542 U.S. at 352, 124 S.Ct. 2519). We addressed Judge Noonan's first argument above, so we turn to his second argument.

Judge Noonan asserts that the Court's pronouncement in *Summerlin*, delivered by Justice Scalia shortly after he wrote the *Crawford* opinion, that the emergence of "new procedural rules without which the likelihood of an accurate conviction is seriously diminished" is unlikely, thwarts a conclusion that *Crawford* announces a new rule. We disagree. We read this portion of *Summerlin* as addressing new *watershed* rules of criminal procedure, not merely new rules. In *Summerlin*, the Court addresses whether its decision in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), applies retroactively. *Summerlin*, 542 U.S. at 349, 124 S.Ct. 2519. In making its determination, the Court analyzes whether *Ring*, which holds "that 'a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty,'" constitutes a watershed rule of criminal procedure. *Id.* at 353, 124 S.Ct. 2519 (quoting *Ring*, 536 U.S. at 609, 122 S.Ct. 2428). Without considering whether the *Ring* holding constitutes a new rule, the Court in *Summerlin* simply states that it does. *Id.* at 352, 358, 124 S.Ct. 2519. The Court's analysis instead centers on whether the rule is procedural and whether it is watershed. The language in *Summerlin* relied upon by Judge Noonan addresses the characteristics of watershed rules; it is not employed to analyze whether a rule is new.

■ We now depart from Judge Noonan's arguments and make an additional observation in support of our holding that *Crawford* announces a new rule. We deem it significant that *Crawford* diverges from the prior test of *Roberts*. Under the *Banks* test, to determine whether the Court has announced a new rule of criminal procedure, we must

ask "whether the rule ... was *dictated* by then-existing precedent." *Banks,* 542 U.S. at 413, 124 S.Ct. 2504 (quoting *Lambrix v. Singletary,* 520 U.S. 518, 527–28, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)). By adding the requirement that the party seeking to exclude the evidence must have had the opportunity for cross-examination, *Crawford* creates a test that was not dictated by the then-current precedent of *Roberts,* which conditioned admission of the evidence on a more broad requisite of trustworthiness. In fact, the Court concedes that the *Roberts* test diverges from the historical principles underlying the Confrontation Clause. *Crawford,* 541 U.S. at 60, 124 S.Ct. 1354. The *Crawford* concurrence also supports the view that the decision announces a new rule, asserting that "the Court of course overrules *Ohio v. Roberts.*" *Id.* at 75, 100 S.Ct. 2531 (Rehnquist, C.J., concurring). Our language in *Fry* is consistent with this analysis. In *Fry,* we did not definitively state that *Crawford* puts forth a new rule because the facts in that case did not demand such a specific conclusion. However, in explaining that *Crawford* abrogates *Roberts,* we noted that "*Crawford* rejects the reliability prong of the *Roberts* test." *Fry,* 92 P.3d at 976.

Finally, we note that several courts have addressed this issue and determined that *Crawford* indeed sets forth a new rule. *Brown v. Uphoff,* 381 F.3d 1219, 1226 (10th Cir.2004); *Murillo v. Frank,* 402 F.3d 786, 790 (7th Cir.2005); *Bockting,* 399 F.3d at 1016; *see Dorchy v. Jones,* 398 F.3d 783, 788 (6th Cir.2005) ("*Teague* thus prohibits Dorchy from availing himself of the new rule articulated in *Crawford.*"); *cf. Mungo v. Duncan,* 393 F.3d 327, 335 (2d Cir.2004) (assuming *Crawford* announces a new rule in order to analyze whether it qualifies as a watershed rule).

Hence, based upon the language of *Crawford* and the fact that its holding satisfies the requirements for determining whether a rule is new, we hold that *Crawford* announces a new rule of criminal procedure.

### 3. The *Teague* Exceptions to the General Rule of Nonretroactivity

The final step in our retroactivity analysis requires us to determine whether the rule

announced in *Crawford* fits an exception to the general tenet that a new constitutional rule of criminal procedure does not apply retroactively to cases on collateral review. *Summerlin,* 542 U.S. at 352, 124 S.Ct. 2519.

■■■ *Teague* outlines two exceptions to this general rule. The first exception allows a new rule to "be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Teague,* 489 U.S. at 311, 109 S.Ct. 1060 (quoting *Mackey,* 401 U.S. at 692, 91 S.Ct. 1160). The second exception mandates the retroactive application of a new rule when it requires observance of "procedures that ... are 'implicit in the concept of ordered liberty.'" *Id.* (quoting *Mackey,* 401 U.S. at 693, 91 S.Ct. 1171) (additional citation omitted). The first exception is not relevant here because the *Crawford* holding does not decriminalize a particular type of conduct. Thus, our analysis centers on the second—the watershed exception.

### C. Watershed Rules of Criminal Procedure

The second exception applies to what the Supreme Court has called "watershed" rules of criminal procedure. *Id.* Edwards argues that *Crawford* fits this exception, and therefore is applicable to his case.

To support his conclusion that *Crawford* announces a watershed rule, Edwards cites a variety of cases characterizing the Confrontation Clause as a fundamental right essential to a fair trial. He bolsters his argument with language from *Crawford* itself, describing the long history and importance of what the Court terms a "bedrock procedural guarantee." *Crawford,* 541 U.S at 42, 124 S.Ct. 1354. Before we address Edwards's arguments, we first take a closer look at the category of watershed rules of criminal procedure.

■■■ A watershed rule is one that implicates the "fundamental fairness and accuracy of the criminal proceeding." *Summerlin,* 542 U.S. at 352, 124 S.Ct. 2519 (citations omitted). However, in order to be consid-

ered watershed, a new rule of criminal procedure must be more than "fundamental"; it "must be one 'without which the likelihood of an accurate conviction is *seriously* diminished.'" *Id.* (quoting *Teague*, 489 U.S. at 313, 109 S.Ct. 1060).

In *Teague*, the Court acknowledged the value of limiting the retroactive application of constitutional rules. Doing so is vital to effectuating finality, which is an essential component of the criminal justice system. *Teague*, 489 U.S. at 309, 109 S.Ct. 1060. Accordingly, the United States Supreme Court has created a very narrow definition of a watershed rule. To fall within the watershed exception, a new rule must fulfill two criteria: (1) "[i]nfringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction;" and (2) "the rule must alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Tyler*, 533 U.S. at 665, 121 S.Ct. 2478 (citations and internal quotations marks omitted). We recognize these watershed criteria are sufficiently general to accommodate a number of fundamental rules and that reaching the level of watershed distinction is a matter of degree. To illustrate what type of rule would qualify as watershed, the United States Supreme Court has cited the holding in *Gideon*, 372 U.S. 335, 83 S.Ct. 792, which recognizes a criminal defendant's right to counsel in cases that involve a possible prison sentence. *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). Indeed, the only decision the Supreme Court has identified as watershed is the *Gideon* holding. *See Murillo*, 402 F.3d at 790.

The notion of a watershed rule of criminal procedure has perhaps been better defined by the instances in which the Supreme Court has declined to apply the label. For example, the Court applied *Teague* in *Summerlin* when it considered whether *Ring v. Arizona* applied retroactively to cases that had already become final. *Ring* held that "a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty." 536 U.S. at 609, 122 S.Ct. 2428. In its analysis, the Court found that the type of judicial factfinding in question did not create an impermissible risk of injustice, and thus the *Ring* holding did not constitute a watershed rule of criminal procedure. *Summerlin*, 542 U.S. at 356, 124 S.Ct. 2519.

Having outlined the analytical framework for determining whether a new rule of criminal procedure is applicable in postconviction proceedings, and bearing in mind the strictures of the watershed exception, we now consider whether *Crawford* constitutes a watershed rule of criminal procedure.

Edwards notes the strong language in *Crawford* supporting his conclusion that it announces a watershed rule. We agree that it is difficult to read *Crawford* and conclude otherwise. Beginning with pre-Roman times, Justice Scalia spends no fewer than six full pages surveying the history of this "bedrock procedural guarantee" and extolling its importance to a fair trial. *Crawford*, 541 U.S. at 42, 43–50, 124 S.Ct. 1354. Justice Scalia's eloquent rendering of the Confrontation Clause's fundamental role in providing a fair trial creates the impression that *Crawford*'s holding could be at the level of *Gideon*'s watershed ruling. However, *Crawford* read in conjunction with *Summerlin* appears to present an insurmountable hurdle to a determination that *Crawford* meets the watershed exception.

*Summerlin* explains that the watershed "class of rules is extremely narrow, and it is unlikely that any ... has yet to emerge." 542 U.S. at 352, 124 S.Ct. 2519 (citations and internal quotation marks omitted). The plain language of this statement, combined with the fact that it was written by Justice Scalia during the same term in which he authored *Crawford*, creates a context in which we deem it impossible to hold that *Crawford* constitutes a watershed rule. And the *Summerlin* holding, itself, further indicates that the Court does not consider *Crawford* a watershed rule. The Court's refusal in *Summerlin* to apply the watershed exception to the *Ring* holding, which subsumes the weighty matter of whether a defendant receives the death penalty or not, is a strong implication that *Crawford*, which regulates the admissibility of evidence, is not a watershed rule.

We decline to interpret the Supreme Court's reference to the Confrontation Clause in *Crawford* as a "bedrock procedural guarantee" to be a designation of watershed status. *Crawford*, 541 U.S. at 42, 124 S.Ct. 1354. While the Clause's guarantee of an accused's right to confront witnesses is undoubtedly fundamental to a fair trial, the rule set forth in *Crawford* does not create that right. Rather, by changing its interpretation of what constitutes an adequate indicia of reliability, the *Crawford* Court redefines how the confrontation right is to be implemented. In contrast, the watershed rule announced in *Gideon* ensures that an accused will receive assistance of counsel; it does not merely define how that right must be effected. Hence, we do not view the *Crawford* rule that an accused must have had the opportunity to cross-examine an unavailable witness as "insur[ing] fundamental human rights of life and liberty" to the degree that the right to counsel does. *Gideon*, 372 U.S. at 343, 83 S.Ct. 792 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

Edwards further argues that the fact that error under *Crawford* is harmless rather than structural does not preclude a conclusion that *Crawford* announces a watershed rule. We agree, but we note that the standard of review assigned to Confrontation Clause violations nonetheless provides some guidance in navigating this issue.

Violations of the Confrontation Clause are constitutional trial errors. *Fry*, 92 P.3d at 980. A constitutional trial error requires reversal only if an appellate court determines the error was not harmless beyond a reasonable doubt, that is, harmless error. *Id.* Constitutional errors can also be structural, meaning they affect the framework of the entire trial and require automatic reversal. *Id.* The United States Supreme Court has labeled total deprivation of counsel—a violation of the right guaranteed by the watershed rule in *Gideon*—as structural error. *Johnson v. United States*, 520 U.S. 461, 468–69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). We do not suggest that a classification of harmless error cannot coincide with watershed status. However, given the rank of

Confrontation Clause violations as harmless error, it would be "difficult to conclude that the rule in *Crawford* alters rights fundamental to due process." *Brown*, 381 F.3d at 1227.

▬ This court has consistently followed the lead of the United States Supreme Court when determining whether a rule of criminal procedure is retroactive. *Timmons*, 690 P.2d at 215. Thus, we join the Tenth, Second, Sixth, and Seventh circuits in determining that *Crawford* is not a watershed rule of criminal procedure. *Brown*, 381 F.3d at 1227; *Mungo*, 393 F.3d at 336; *Dorchy*, 398 F.3d at 788; *Murillo*, 402 F.3d at 790. We hold that *Crawford* is not a watershed rule of criminal procedure and therefore does not apply retroactively to cases involving post-conviction proceedings that concern convictions finalized prior to *Crawford*. Accordingly, we uphold the court of appeals' decision in *People v. Edwards*.

## IV. Conclusion

For the reasons stated, we affirm the judgment of the court of appeals.

Justice RICE and Justice COATS do not participate.