The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 7, 2026

**2026 COA 36**

**No. 24CA2021, *People v. Medina* — Criminal Law — Postconviction Remedies — Punishment for Habitual Criminals**

In this postconviction proceeding, a division of the court of appeals considers, as a matter of first impression in Colorado, whether the rule announced in *Erlinger v. United States*, 602 U.S. 821, 835 (2024) — which requires that a jury, rather than a judge, determine whether a defendant committed prior offenses on separate occasions for purposes of habitual sentencing — may be applied retroactively to cases that became final before the rule's announcement. Applying the framework established in *Teague v. Lane*, 489 U.S. 288, 310-11 (1989), the division concludes that, to the extent that *Erlinger* announced a new rule of constitutional law, the rule is neither substantive nor a watershed rule of procedure and, thus, it does not apply retroactively on collateral review. The

division therefore affirms the postconviction court's denial of the defendant's Crim. P. 35(c) motion, which was both untimely and successive.

The division also rejects the defendant's claim alleging a violation of his speedy trial rights under the Uniform Mandatory Disposition of Detainers Act. Applying the law of the case doctrine, the division declines to consider this issue, which was previously rejected by two prior divisions of the court.

COLORADO COURT OF APPEALS                                    **2026 COA 36**

---

Court of Appeals No. 24CA2021
Jefferson County District Court No. 14CR3044
Honorable Chantel Contiguglia, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Delano Marco Medina,

Defendant-Appellant.

---

ORDERS AFFIRMED

Division VII
Opinion by JUDGE GOMEZ
Pawar and Johnson, JJ., concur

Announced May 7, 2026

---

Philip J. Weiser, Attorney General, Brock J. Swanson, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Delano Marco Medina, Pro Se

¶ 1       The United States Supreme Court held in *Erlinger v. United States* that for purposes of sentencing a defendant under the federal Armed Career Criminal Act — which increases prison terms for defendants who previously committed three violent felonies or serious drug offenses on separate occasions — the Fifth and Sixth Amendments require a jury, rather than a judge, to decide whether the defendant's prior offenses were committed on separate occasions. 602 U.S. 821, 835 (2024). The Colorado Supreme Court has held that this rule applies to Colorado's habitual criminal sentencing statute, such that a jury, rather than a judge, must decide whether a defendant's prior felony convictions arose out of separate and distinct criminal episodes. *People v. Gregg*, 2025 CO 57, ¶ 24; *see* § 18-1.3-801(1)(b)(I), (1.5), (2)(a)(I), C.R.S. 2025.[1]

¶ 2       In this appeal, defendant, Delano Marco Medina, asks us to consider, as a matter of first impression in Colorado, whether this rule may be applied retroactively to cases that became final before the rule was announced. We hold that it cannot. Therefore, we

---

[1] After the announcement of *Erlinger v. United States*, 602 U.S. 821 (2024), the General Assembly amended the habitual criminal sentencing statute to require a jury to make such decisions. *See* Ch. 344, sec. 1, § 18-1.3-803(1), 2025 Colo. Sess. Laws 1866.

conclude that the postconviction court properly denied Medina's untimely and successive postconviction motion raising the issue.

¶ 3    Medina also challenges the postconviction court's order denying his motion to dismiss all the charges against him based on an alleged violation of his right to a speedy trial under the Uniform Mandatory Disposition of Detainers Act (UMDDA), §§ 16-14-101 to -108, C.R.S. 2025.  We decline to consider his challenge, which two prior divisions of this court have already rejected.

¶ 4    Accordingly, we affirm both orders.

## I.    Background

¶ 5    Following an incident in which Medina pursued and fired a gun toward someone he claimed had threatened his girlfriend, Medina was charged with attempted first degree assault, two counts of felony menacing, possession of a weapon by a previous offender, and seven habitual counts.  Not long after the initial charges were filed, Medina was arrested and held in another county of the state on charges and warrants issued in other cases.

¶ 6    In December 2014, Medina submitted a request under the UMDDA, which allows a person in the custody of the Department of Corrections (DOC) to request the final disposition of any untried

charges pending against them in the state.  *See* § 16-14-102(1), C.R.S. 2025.  But the district attorney in this case initially didn't receive the request, and while Medina sent a copy of the request to the DOC, he wasn't in DOC custody at the time.  He entered DOC custody in mid-March 2015, and the DOC forwarded his request to the district attorney in late April.  The district attorney received it in early May.  Medina's trial was set for mid-August of that year.

¶ 7   A few weeks before trial, Medina filed a motion to dismiss the charges, asserting that the court had lost jurisdiction over the case because it hadn't gone to trial within the statutory deadline of 182 days after he submitted his UMDDA request.  *See* § 16-14-104(1), C.R.S. 2025.  The trial court denied the motion.

¶ 8   The trial proceeded, and a jury convicted Medina on all the substantive charges.  The trial court then found Medina guilty of all the habitual charges, adjudicated him a habitual criminal, and sentenced him to forty-four years in the custody of the DOC.

¶ 9   Medina appealed, arguing, as relevant here, that his right to a speedy trial under the UMDDA had been violated.  A division of this court rejected his argument and affirmed the judgment.  *See People v. Medina*, slip op. at ¶ 22 (Colo. App. No. 15CA1681, May 23, 2019)

3

(not published pursuant to C.A.R. 35(e)), *as modified on denial of reh'g* (Aug. 22, 2019) (*Medina I*). The division concluded that because Medina had only substantially (not strictly) complied with the UMDDA's procedural requirements, he had to establish that the prosecution had actual notice of his UMDDA request. *Id.* at ¶¶ 17-19; *see People v. McKimmy*, 2014 CO 76, ¶ 24. And because the prosecution didn't have actual notice until May 2015 and the trial was held less than 182 days later, the trial was timely. *Medina I*, slip op. at ¶ 20; *see* § 16-14-104(1). The division also concluded that, to the extent that the DOC had failed to timely submit Medina's UMDDA request to the prosecution, Medina hadn't suffered any prejudice because the trial occurred within 182 days of when the court and the prosecution would've received the request had the DOC sent it in a timely manner. *Medina I*, slip op. at ¶¶ 9, 21; *see Martin v. People*, 738 P.2d 789, 792-93 (Colo. 1987).

¶ 10    Then, in a Crim. P. 35(c) motion, Medina again invoked the UMDDA, presenting additional evidence that he claimed established that he was in DOC custody at the time he made his UMDDA request. The postconviction court denied the motion. Another division of this court affirmed the denial, concluding that the

4

evidence Medina had presented either wasn't new or didn't support his claim. *People v. Medina*, slip op. at ¶¶ 17-22 (Colo. App. Nos. 21CA0604 & 21CA0704, Jan. 25, 2024) (not published pursuant to C.A.R. 35(e)) (*Medina II*).

¶ 11 Thereafter, Medina filed the two motions now at issue. First, he filed another motion to dismiss all charges, once again arguing that his UMDDA rights were violated, but this time raising the issue under Crim. P. 35(a). The postconviction court summarily denied the motion. And second, he filed a motion to dismiss the habitual charges, arguing that, under *Erlinger* — which was announced after the *Medina II* decision — his conviction on the habitual charges was unconstitutional because a judge, rather than a jury, had made the determination that his prior convictions arose out of separate and distinct criminal episodes. The postconviction court denied the motion, concluding that *Erlinger* didn't apply retroactively.

¶ 12 Medina now appeals the postconviction court's orders denying his two motions to dismiss.

## II. UMDDA Challenge

¶ 13 Medina first contends that his sentence is illegal because the trial court lacked jurisdiction due to violation of the UMDDA.

5

Applying the law of the case doctrine, we decline to address this issue, as it has already been resolved by two divisions of this court.[2]

¶ 14　　We review a court's summary denial of a Crim. P. 35(a) motion de novo. *See People v. Bassford*, 2014 COA 15, ¶ 20. We likewise review de novo the question whether a prior ruling by a court constitutes the law of the case. *People v. Misenhelter*, 214 P.3d 497, 500 (Colo. App. 2009), *aff'd*, 234 P.3d 657 (Colo. 2010).

¶ 15　　The law of the case doctrine rests on the principle that "when an issue is once litigated and decided, that should be the end of the matter." *Verzuh v. Rouse*, 660 P.2d 1301, 1303 (Colo. App. 1982) (quoting *United States v. U.S. Smelting Refin. & Mining Co.*, 339 U.S. 186, 198 (1950)). This doctrine applies to attempts to relitigate an appellate court's holdings and the rulings logically necessary to those holdings. *People v. Roybal*, 672 P.2d 1003, 1005 (Colo. 1983). It also applies to successive postconviction motions brought under Crim. P. 35(a). *People v. Tolbert*, 216 P.3d 1, 5-6 (Colo. App. 2007).

---

[2] This issue also is more properly raised under Crim. P. 35(c) than under Crim. P. 35(a), as it doesn't challenge Medina's sentence so much as it challenges the judgment of conviction. *See People v. Wenzinger*, 155 P.3d 415, 418 (Colo. App. 2006) (comparing these two subsections of Rule 35). As such, it is likely both untimely and successive, just like Medina's *Erlinger* challenge.

¶ 16    Although one division of this court is not bound by the decision of any other division, *see People v. Williams*, 2025 COA 26, ¶ 14, we generally apply the law of the case doctrine to refuse to revisit issues resolved by another division in the same case unless "the previous decision is no longer sound because of changed conditions or law, or legal or factual error" or applying "the prior decision would result in manifest injustice," *Cummings v. Arapahoe Cnty. Sheriff's Off.*, 2021 COA 122, ¶ 12 (quoting *Saint John's Church in Wilderness v. Scott*, 2012 COA 72, ¶ 9).

¶ 17    Here, while Medina's UMDDA argument is framed differently than before, the substance of his argument is virtually the same as it was in his earlier appeals. Again, he argues that he was in DOC custody when he made his UMDDA request and that the 182-day statutory deadline expired before the time of trial. And while he claims the previous decisions didn't address some of his specific arguments, the divisions in those cases nonetheless rejected his UMDDA claim and fully explained their reasons for doing so.

¶ 18    We decline to reconsider this issue. Medina hasn't shown that the previous divisions' decisions are no longer sound due to changed conditions, new law, or legal or factual error, nor has he

7

shown that applying those decisions would result in manifest injustice. *See Cummings*, ¶ 12. Accordingly, we treat the decisions as the law of the case and do not revisit them.

### III. *Erlinger* Challenge

¶ 19 Medina also contends that his habitual sentence is illegal under *Erlinger* because a judge, rather than a jury, made the determination that his prior convictions arose out of separate and distinct criminal episodes. While the rule set forth in *Erlinger* does apply to habitual sentences like Medina's, *see Gregg*, ¶ 24, in this case, unlike in *Gregg*, Medina's conviction was final before *Erlinger* was announced. And we agree with the postconviction court's conclusion that *Erlinger* cannot be applied retroactively on collateral review. Accordingly, we conclude that Medina's challenge was properly denied, as it is both untimely and successive.[3]

### A. Procedural Bars to Review

¶ 20 The People assert that Medina's postconviction motion based on *Erlinger* was untimely under Crim. P. 35(c)(3)(I) and section 16-5-402(1), C.R.S. 2025, because he didn't file it within three years

---

[3] We reject the People's argument that Medina failed to properly include his *Erlinger* challenge within the scope of his appeal.

after his conviction became final and didn't identify an applicable exception to the limitation period. However, "[a] reviewing court has the discretion to address the merits of an untimely motion for postconviction relief if the motion is premised on newly arising authority of constitutional magnitude" that applies retroactively to cases on collateral review. *People v. Rainer*, 2013 COA 51, ¶ 28, *rev'd on other grounds*, 2017 CO 50.

¶ 21    Similarly, the People assert that Medina's *Erlinger* challenge is successive because he could've raised it in his direct appeal or his earlier Crim. P. 35(c) motion. *See* Crim. P. 35(c)(3)(VII). But again, we may address "[a]ny claim based on a new rule of constitutional law that was previously unavailable," so long as the rule applies retroactively to cases on collateral review. Crim. P. 35(c)(3)(VII)(c).

¶ 22    Therefore, to determine whether we can address the merits of Medina's claim, we must assess whether *Erlinger* established a new rule of constitutional law that can be applied retroactively to cases on collateral review. *See Rainer*, ¶ 29; Crim. P. 35(c)(3)(VII)(c).

## B.    The *Teague* Framework

¶ 23    We apply the test set out in *Teague v. Lane*, 489 U.S. 288, 310-11 (1989), to determine whether a new constitutional rule of

9

criminal procedure applies retroactively to cases on collateral review. *Edwards v. People*, 129 P.3d 977, 983 (Colo. 2006). This analysis presents a question of law that we review de novo. *See People v. Cooper*, 2023 COA 113, ¶ 7. Under the *Teague* test, we examine (1) whether the defendant's conviction is final; (2) whether the rule is in fact new; and (3) whether the rule meets either of the two exceptions to the general bar precluding retroactive application of new rules to cases that were final before the rules were announced. *Edwards*, 129 P.3d at 983. The two exceptions are when the new rule is substantive in nature and when it is a watershed procedural rule. *Id.* at 986; *Cooper*, ¶ 8.[4]

¶ 24    Here, there is no question as to the finality of Medina's conviction. The conviction became final when the mandate was

---

[4] The United States Supreme Court has abolished the watershed exception for purposes of federal collateral review. *See Edwards v. Vannoy*, 593 U.S. 255, 272 (2021). But the Colorado Supreme Court had already adopted that exception as part of Colorado's test, *see Edwards v. People*, 129 P.3d 977, 986 (Colo. 2006), and it hasn't since then determined whether the exception still applies under Colorado law, *see McDonald v. People*, 2024 CO 75, ¶ 16 n.3 (avoiding the issue). Therefore, we presume that the exception still applies. *See People v. Harmon*, 2019 COA 156, ¶ 3 n.1 ("[W]e are bound by holdings of the Colorado Supreme Court and must follow those holdings unless and until they are overruled by that court.").

issued in his direct appeal. *See Edwards*, 129 P.3d at 983. Thus, we turn to consideration of the rule announced in *Erlinger*.

C.    Whether *Erlinger* Announced a New Constitutional Rule

¶ 25    We first conclude that *Erlinger* announced a new rule of constitutional law.

¶ 26    "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301. Thus, a rule is not new if it "was *dictated* by then-existing precedent" and "was apparent to all reasonable jurists" at the time. *Beard v. Banks*, 542 U.S. 406, 413 (2004) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997)).

¶ 27    Under this test, *Erlinger* announced a new rule because it broke new ground.

¶ 28    In *Almendarez-Torres v. United States*, the United States Supreme Court held that when recidivism is treated as a sentence enhancer, a judge can find the fact of a prior conviction rather than submitting the issue to a jury. 523 U.S. 224, 246-47 (1998). Then, in *Apprendi v. New Jersey*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

jury." 530 U.S. 466, 490 (2000). And in *Blakely v. Washington*, the Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. 296, 303 (2004) (emphasis omitted).

¶ 29    In the wake of these and other related decisions, all twelve federal circuit courts held that judges may make the determination of whether prior offenses occurred on different occasions. *Erlinger*, 602 U.S. at 856 (Kavanaugh, J., dissenting) (collecting cases). But the United States Supreme Court disagreed in *Erlinger*, concluding that to comply with the Fifth and Sixth Amendments, juries — not judges — must make such determinations. 602 U.S. at 835.

¶ 30    Thus, the rule announced in *Erlinger* was neither dictated by pre-existing precedent nor apparent to all reasonable jurists. *See Beard*, 542 U.S. at 413. Accordingly, it was a new constitutional rule. *See Chaidez v. United States*, 568 U.S. 342, 352 (2013) (a decision announced a new rule when it "answered a question about the Sixth Amendment's reach that [the Supreme Court] had left open, in a way that altered the law of most jurisdictions").

## D. Whether *Erlinger* Meets Either *Teague* Exception

¶ 31 But while *Erlinger* did announce a new constitutional rule, we conclude that the rule doesn't meet either *Teague* exception, as it is neither a substantive rule nor a watershed procedural rule.

¶ 32 As to the first exception, rules are substantive if they "forbid[] 'criminal punishment of certain primary conduct'" or "prohibit[] 'a certain category of punishment for a class of defendants because of their status or offense.'" *Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016) (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)). In other words, "[a] rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). "In contrast, rules that regulate only the *manner of determining* the defendant's culpability are procedural." *Id.* Procedural rules "alter 'the range of permissible methods for determining whether a defendant's conduct is punishable.'" *Welch v. United States*, 578 U.S. 120, 129 (2016) (quoting *Schriro*, 542 U.S. at 353). "Rules that allocate decisionmaking authority" between a judge and a jury "are prototypical procedural rules." *Schriro*, 542 U.S. at 353.

¶ 33    The rule announced in *Erlinger* is procedural, not substantive. It doesn't alter the range of conduct or the class of persons the law punishes. *See id.* Rather, it solely affects the manner of determining a defendant's punishment by allocating decision-making authority between a judge and a jury on an issue affecting habitual sentencing. *See id.*; *see also People v. Johnson*, 142 P.3d 722, 725 (Colo. 2006) (the rule announced in *Blakely* was procedural); *People v. Bradbury*, 68 P.3d 494, 498 (Colo. App. 2002) (the rule announced in *Apprendi* was procedural). *See generally United States v. Charles*, 813 F. Supp. 3d 200, 203 (D. Mass. 2025) ("There is no question that *Erlinger*'s rule is procedural.").

¶ 34    The second, watershed exception is "extremely narrow," *People v. Tate*, 2015 CO 42, ¶ 56 (quoting *Schriro*, 542 U.S. at 352), and applies only when a rule of criminal procedure "implicat[es] the fundamental fairness and accuracy of the criminal proceeding," *Johnson*, 142 P.3d at 726 (quoting *Beard*, 542 U.S. at 417). "[I]n order to be considered watershed, the new rule must be more than 'fundamental'; it 'must be one "without which the likelihood of an accurate conviction is *seriously* diminished."'" *Edwards*, 129 P.3d at 986-87 (quoting *Schriro*, 542 U.S. at 352).

¶ 35    As the Colorado Supreme Court has recognized, the watershed exception doesn't apply to the rule announced in *Ring v. Arizona*, 536 U.S. 584, 609 (2002) — which is that only a jury, not a judge, may find an aggravating circumstance necessary to impose the death penalty — because "the type of judicial factfinding in question [does] not create an impermissible risk of injustice." *Edwards*, 129 P.3d at 987 (citing *Schriro*, 542 U.S. at 356). For similar reasons, and because the issue involved sentencing procedures as opposed to a determination of innocence or guilt, the Colorado Supreme Court later determined that *Blakely*, too, doesn't fall within the exception. *Johnson*, 142 P.3d at 727-28. And a division of this court also held that *Apprendi* doesn't fall within the exception. *Bradbury*, 68 P.3d at 499.

¶ 36    Given that all these cases raise similar issues concerning the allocation of decision-making authority between a judge and a jury, if *Ring*, *Apprendi*, and *Blakely* don't qualify as cases announcing watershed procedural rules, it's difficult for us to understand how *Erlinger* could. And Medina doesn't offer any arguments that might support such a distinction. Accordingly, we conclude that the rule announced in *Erlinger* isn't a watershed procedural rule.

## E. Conclusion

¶ 37 Because neither of the *Teague* exceptions to the bar on retroactivity applies, we conclude that the rule announced in *Erlinger* does not apply retroactively on collateral review. The postconviction court thus properly denied Medina's *Erlinger* motion, as the motion was both untimely and successive. *See* Crim. P. 35(c)(3)(I), (VII); § 16-5-402(1).[5] Therefore, we don't address the merits of Medina's claim challenging his habitual sentence.

## IV. Disposition

¶ 38 The orders are affirmed.

JUDGE PAWAR and JUDGE JOHNSON concur.

---

[5] Medina argues that there's no need for the rule announced in *Erlinger* to be retroactive because the rule pronounced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), still applies, and under that rule, he was entitled to have a jury consider his habitual charges. But that doesn't help his case. *Apprendi* was announced in 2000, long before Medina's case became final, so it doesn't enable him to overcome the procedural bars to his untimely and successive postconviction claim. *See* Crim. P. 35(c)(3)(I), (VII); § 16-5-402(1), C.R.S. 2025.

16